## J. H. ROBINSON ET AL. v. FIRST NATIONAL BANK OF MARIETTA.

No. 1352. Decided October 31, 1904.

**1.—Partnership—Declarations of Partner to Prove.**

The declarations of a defendant are not admissible against his alleged copartner to prove the existence of a partnership between them which the latter has denied, though introduced merely in corroboration of other evidence tending to prove its existence. (Pp. 187, 188.)

**2.—Same—Bankruptcy—Fraud.**

Though it might be admissible to prove the declarations of a defendant, made to obtain a loan, that another was a partner in the firm, for the purpose of showing that declarant, such other person having denied partnership, had obtained the loan by fraud and was not released from the debt by his discharge in bankruptcy, its effect should have been limited to that issue and excluded as evidence of the existence of such partnership. (Pp. 188, 189.)

**3.—Evidence—Partnership.**

The fact that one had transferred his real estate to relatives was not

admissible as evidence that he was liable on debts of a partnership of which he denied being a member. (P. 189.)

**4.—Partnership—Corporation—Charge.**

On the issue that defendant had agreed to a change of a business conducted by a mercantile corporation in which he was a stockholder into a partnership of which he was a member, an instruction that if stockholders agreed to do business under a changed name "for their mutual benefit" they would be partners whether they intended to become so or not, was erroneous. (Pp. 189-191.)

**5.—Partnership—Bankruptcy.**

That creditors proved their claim against two partners who had gone into bankruptcy did not affect their rights against the partners who had not done so. (P. 191.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Cooke County.

The Bank sued Robinson and Hoskins with others, and had judgment against them, which was affirmed on their appeal, whereupon appellants obtained writ of error.

*Stuart & Bell,* for plaintiffs in error.—The testimony of Butler, Walker and Kelly as to statements made to them by Saxon and Pierce, or either of them, in the absence of appellants, that appellants were interested in and partners in business of Saxon, Pierce & Co., was as to appellants hearsay and inadmissible, and if said testimony or any part of the same was admissible against Saxon and Pierce on issue of fraud, still the trial court should, when requested, have instructed the jury not to consider the same against appellants. Halsell v. Decatur Oil Co., 36 S. W. Rep., 848, and cases therein cited; Weir v. McGee, 25 Texas Supp., 24; Western U. Tel. Co. v. Wingate, 6 Texas Civ. App., 396; Missouri K. & T. Ry. Co. v. Collins, 15 Texas Civ. App., 23; McCamant v. Roberts, 25 S. W. Rep., 732; Missouri K. & T. Ry. Co. v. Rose, 19 Texas Civ. App., 473; Western U. Tel. Co. v. Seals, 45 S. W. Rep., 964; Missouri Pac. Ry. Co. v. Sherwood, 84 Texas, 136; Noel v. Denman, 76 Texas, 309; Coleman v. Colgate, 69 Texas, 91; Wright v. Doherty, 50 Texas, 42; Latham v. Pledger, 11 Texas, 439; Lyons v. Texas & P. Ry. Co., 36 S. W. Rep., 1007; Tabet v. Powell, 2 Texas Law Jour., 1019; Mechem on Agency, secs. 100, 101, 714; McAlpin v. Cassidy, 17 Texas, 450; Hinson v. Walker, 65 Texas, 107; International & G. N. Ry. Co. v. Ragsdale, 67 Texas, 27; Western U. Tel. Co. v. Foster, 64 Texas, 220; Ewell's Evans on Agency, 218.

Where it is not shown that a man authorized or had anything to do with the publication of a notice in a newspaper, said notice is not admissible in evidence against him. 1 Greenl. on Evi., sec. 99.

As the fact that appellant Robinson, in the early part of November, 1901, transferred all his lands in Cooke County, Texas, to his wife and sister, threw no light on any issue in this case, it was irrelevant and immaterial, and should have been excluded.

If the stockholders of a corporation agree to change the name of the

corporation, and to run on as a corporation, this does not in law make them partners, regardless of the fact whether or not they intend to become partners. 17 Am. and Eng. Enc. of Law, 1 ed., 866-867; 1 Morawetz on Corp., secs. 353, 354, 771, 772.

The first section of the court's charge was erroneous, in that it excluded from the consideration of the jury the defense that the loan for which the note herein sued on was given was made to a corporation, and not to a partnership. Same authorities; also Planters and Miners Bank v. Padgett, 69 Ga., 159; Smith v. Lumber Co., 92 Texas, 450.

The court erred in the third section of his charge to the jury, which reads as follows: "After Saxon and Pierce went into bankruptcy, as shown by the evidence, it became the duty of plaintiff to file its claim and collect its dividend out of their estate before it could hold Robinson and Hoskins as partners of Saxon and Pierce, if they were partners, and the fact that plaintiff did file its claim and obtain its dividend could not affect the liability of Robinson and Hoskins in this suit, if you find they are liable." U. S. Bankrupt Law of 1898, chap. 3, sec. 16.

The court erred in refusing requested charge B of these defendants, which reads as follows: "If you find it was understood between plaintiff's cashier and J. A. Saxon and B. F. Pierce, at the time the loan was made, for which the note herein sued on was given, that said loan was being made to a corporation and that the name of Saxon, Pierce & Co. was another name for J. A. Saxon Mercantile Co., and that credit was extended to said corporation, you will find for defendants Robinson and Hoskins. 17 Am. and Eng. Enc. of Law, 1 ed., 866, 867; 10 Id., 662; Planters and Miners Bank v. Padgett, 69 Ga., 159; Am. Salt Co. v. Heidenheimer, 80 Texas, 344; O'Donnell v. Johns, 76 Texas, 362; Whitney v. Wyman, 101 U. S., 392; 1 Morawetz, Corporations, sec. 354; 2 Id., secs. 748, 771; Snider Sons Co. v. Troy, 91 Ala., 224.

*Culp & Giddings,* for defendant in error.—When there is evidence aliunde tending to show a partnership, the acts and declarations of one partner are admissible against his alleged copartners. Bush v. Kellogg Co., 34 S. W. Rep., 1057; Stiff v. Fisher, 2 Texas Civ. App., 349; Caroway v. Citizens Bank of Weatherford, 29 S. W. Rep., 508; 17 Am. and Eng. Enc. of Law, 1 ed., 1316.

The fact that Robinson transferred all his property to his wife and sister just before or about the time the meeting was held at Myra and it was decided to remove the goods across the river, was admissible as a circumstance supporting plaintiff's theory that it was agreed between them to go into the new enterprise to be known as "Saxon, Pierce & Co." and thereby save themselves and the old company, and that Robinson was preparing for the future in the event the new enterprise failed. The weight to be given this circumstance was for the jury.

If the defendants agreed to remove the stock of goods belonging to the J. A. Saxon Mercantile Company across the river and do business under another name for their mutual benefit, they would be liable as

partners to third parties, regardless of their intentions. Cincinnati Cooperage Co. v. Bate, 26 S. W. Rep., 538, where the identical question is decided; 17 Am. and Eng. Enc. of Law, 1 ed., 860, 865.

When Robinson and Hoskins sold out to Saxon & Pierce and gave notice to plaintiff, the retiring partners stood in the attitude of sureties to plaintiff, and when thereafter Saxon & Pierce went into bankruptcy it became a duty of plaintiff, which it owed to retiring partners, to collect such part of its debt from Saxon & Pierce as it could by filing its claim in the bankruptcy court, and the court did not err in so informing the jury. Hall v. Johnston, 6 Texas Civ. App., 116

GAINES, CHIEF JUSTICE.—This suit was brought by defendant in error against J. H. Robinson, W. A. Hoskins, B. F. Pierce and J. A. Saxon to recover a promissory note signed in the name of Saxon, Pierce & Co., and by Pierce and Saxon individually. The parties defendant were alleged to be a partnership doing business under the name of Saxon, Pierce & Co. Robinson and Hoskins pleaded under oath denying the alleged partnership. Saxon and Pierce pleaded that they had been discharged in bankruptcy. To this plea the plaintiff replied by supplemental petition, that if in fact Robinson and Hoskins were not partners in the alleged firm the plaintiff was induced to make the loan by the false and fraudulent representations of Saxon and Pierce, that they were such, and that therefore the debt was not discharged. There was a verdict against Robinson and Hoskins for the balance due on the note and in favor of Saxon and Pierce upon their plea in bankruptcy. There was a judgment accordingly, from which Robinson and Hoskins appealed to the Court of Civil Appeals, in which the judgment was affirmed. They have procured a writ of error from this court. During the course of the trial one Kelly was permitted to testify to declarations made to him by defendant Saxon, when neither defendant Robinson nor defendant Hoskins was present. The testimony admitted was as follows: "That in January, 1902, at Marietta, I. T., the defendant J. A. Saxon in conversation with him offered to sell him the interest of the defendants J. H. Robinson and W. A. Hoskins in the business at Marietta that was then being run under the name of Saxon, Pierce & Co., and stated to him that said Robinson and Hoskins were partners in said business."

We are of opinion that it was error to admit this testimony. Before the declarations were admitted, testimony had been produced which tended to show that Robinson and Hoskins were partners of Saxon and Pierce. As a general rule, the declarations of one tending to show his partnership with another are not admissible for the purpose of showing such partnership. Brown v. Watson, 72 Texas, 216; Buzard v. Jolly, 6 S. W. Rep., 422—a case of agency to which the same principle applies. There is authority, however, which qualifies the rule to the extent of holding that, if there be evidence already introduced which tends to show a partnership, the declarations of one of the alleged partners is

admissible to corroborate that evidence. The cases which we have found and which apparently recognize this exception are not very fully reported and leave us in doubt as to what the courts did really intend to decide. That is to say, it is not clear that the declarations were admitted to prove the partnership. Where the question of partnership is involved and evidence tending to show a partnership sufficient to authorize a jury to find its existence has been introduced, then the declarations of one of the alleged partners are admissible in so far as they tend to show liability on part of the partnership. The courts which allow the exception seem to us to have been misled by the doctrine just announced. But the principles applicable to the issue of partnership or not, and to that of the liability of the partnership, whoever may constitute it, are widely different. The declarations of a partner are admissible as against the firm, because he is the agent of the firm. Hence, if the partnership be disputed and there be evidence to show a partnership, the declarations of the alleged partner which go to show the partnership's liability for the debt are admissible and should go to the jury, with the instruction that they are to be disregarded provided they should find that the fact of partnership is not established. But where the declarations bear solely upon the issue of partnership or not, we see no good reason for their admission. If the partnership be already established beyond question, then their admission is unnecessary. Declarations as against a third party are but hearsay and as such are not evidence. A party's own declarations, being his admissions, are evidence against him; and the declarations of one whom he has authorized to speak for him, such as his agent or partner, stand upon the same footing. But where the authority to represent him is the very question at issue, it is illogical to say that the declarations of one whose authority is in dispute are admissible upon the question of that authority. Hence, as has been said, the general rule is well settled, that, upon that question, his declarations are illegal, and we fail to see how the fact that the evidence is offered in corroboration can make it legal when it was before illegal. The point was clearly presented in the case of Robbins v. Willard (6 Pick., Mass., 464), and the decision is briefly reported as follows: "Willard was defaulted, and after prima facie evidence of a partnership had been given his declarations were admitted for the purpose of satisfying the jury of the existence of the partnership; but the court were clear that the evidence was inadmissible for that purpose. Citing Tuttle v. Cooper, 5 Pick., 414, 2 ed., 417, note 1."

For the same reason we think it was error not to exclude the testimony of the witness Walker, which was objected to by defendants Robinson and Hoskins.

Upon the principles announced we also think the notice of dissolution should have been excluded.

The testimony of Butler, the cashier of the plaintiff bank, presents a different question. The witness testified, that, at the time of making

the loan and before the transaction was consummated, both Saxon and Pierce stated to him that Robinson and Hoskins were partners in the business. The case seems to have been tried upon the theory that if Saxon and Pierce procured the loan by the representation that Robinson and Hoskins were partners with them in the business and that this representation was false, the discharge in bankruptcy would not exempt them from liability for the debt. The original bankrupt act admits of the construction that only debts created by fraud which had been reduced to judgment before the discharge were not discharged by it. The amendment of 1903 leaves no doubt upon this question, but the discharge in the case was granted before that amendment was passed. We have our doubts whether this theory was correct. But since the verdict and judgment were in favor of Saxon and Pierce, and the plaintiff has not appealed, we need not determine that question. That issue is no longer in the case. If a debt created by fraud and not reduced to judgment before the discharge in bankruptcy, was not discharged, then the evidence was admissible against Saxon and Pierce upon the issue of fraud. But even if the evidence was admissible, under that or any other issue except as to that of the existence of the partnership as claimed, the court erred in refusing the third requested instruction which would have limited its consideration to an issue upon which it was admissible.

We are also of opinion that the fact that a short time before the stock of goods was removed to Marietta Robinson had transferred all his lands in Cooke County to his wife and sister in payment of debts due them was without probative force and should have been excluded by the trial court.

The facts in evidence upon the trial of the case were as follows: The Saxon Mercantile Company was a corporation organized under the laws of Texas, doing a mercantile business at Myra, in Cooke County. The defendants in this suit were the only stockholders of the concern. During the latter part of November, 1901, the corporation being unable to pay its debts in the usual course of business, the stockholders had a meeting at which it was determined to move the stock of merchandise to Marietta, in the Indian Territory. About the 1st of December next thereafter the stock was moved by Saxon and Pierce to Marietta, where they opened a storehouse and proceeded to sell the goods. Some time thereafter and before the 12th of December (the day on which the note sued upon was executed) they changed the name of the concern to Saxon, Pierce & Co. and put up a canvas sign with that name upon it. There was no direct evidence that either Robinson or Hoskins knew anything of this change. The note was given for borrowed money which was used in paying the debts owed by the corporation before the removal of the stock. In January, 1902, Robinson went to Marietta and sold his interest in the concern to Saxon and Pierce for $500—each of them giving him his note for $250. Saxon and Pierce subsequently went into

bankruptcy and were discharged. They pleaded and proved their discharge.

So far the facts are undisputed. Each of the defendants testified that the purpose of moving the stock to Marietta, as agreed upon at the meeting in November, was to sell it out and pay the debts of the corporation, and that it was also agreed at the time to buy some goods in order to "freshen up" the stock, which was done before the removal was made. Saxon also testified that the reason for changing the name was not to convert the corporation into a partnership, but because the Secretary of State for the State of Texas had written him that the corporation could not do business in the Indian Territory. Each of the defendants denied in his testimony that any partnership had been agreed upon between them. Saxon testified that it was his understanding that the money was loaned to the corporation, and that he advised Butler, the cashier of the bank, of the change in the name. The bank had received deposits up to December 11th (the day before the note was made) in the name of the Saxon Mercantile Company. Pierce also testified that his understanding was that the loan was made to the corporation.

Such being the evidence, the council for defendants asked the court the following instruction: "If you find it was understood between plaintiff's cashier and J. A. Saxon and B. F. Pierce, at the time the loan was made for which the note herein sued on was given, that said loan was being made to a corporation and that the name of Saxon, Pierce & Co. was another name for J. A. Saxon Mercantile Co., and that credit was extended to said corporation, you will find for defendants, Robinson and Hoskins." On the other hand the court in its general charge gave the following instruction: "If you believe from the evidence that, prior to the execution of the note herein sued, the defendants, Robinson, Hoskins, Saxon and Pierce, agreed to cease doing business in the name of J. A. Saxon Mercantile Company and to do business in the name of Saxon, Pierce & Co., for their mutual benefit, this in law would make them all partners, whether they intended to become partners or not, and if you so find, you will find for the plaintiff against the defendants Robinson and Hoskins, and in favor of the defendants Saxon and Pierce." Each of the charges quoted suggests what we think a correct proposition of law; but from the language in which the refused instruction is couched we doubt whether it ought to have been given. If, as there was testimony to show, the name of Saxon, Pierce & Co. was adopted as a new name for the corporation in the name of the Saxon Mercantile Company, and if the understanding between the parties to the loan was that it was made to the corporation and not to a partnership in the name of Saxon, Pierce & Co., then, in our opinion, Robinson and Hoskins were not liable for the debt. On the other hand, if the stockholders of the corporation agreed to cease doing business as a corporation and to carry it on as a partnership under the name of Saxon, Pierce & Co., all would be bound for the debt. The paragraph of the

court's charge now under consideration goes further than this and admits of the construction, that, if the stockholders agreed to change the name of the corporation and did change it, and continued the business, they would be bound as partners. The qualification made by the words "for their mutual benefit" amounts to no limitation or qualification whatever, for if the intention was to continue the business as a corporation still the business would be for the benefit of every stockholder. In our opinion the unauthorized change of the name of a corporation would not render the stockholders liable as partners for its liabilities which subsequently accrued. We therefore think that the court erred in giving the charge.

In our opinion the plaintiffs in error have no just cause to complain of the third paragraph of the court's charge. As we think, the fact that the bank proved up its claim against Saxon and Pierce in the bankrupt court did not affect the liability of Robinson and Hoskins; and the court might properly have so instructed the jury without qualification. The proposition upon which the instruction is predicated may or may not be correct; but even if correct, we fail to see that the plaintiff in error could have been in any manner prejudiced by it.

For the errors pointed out, the judgments are reversed and the cause remanded.

*Reversed and remanded.*