Johnny MILLER, et ux., Appellants,

v.

C. Ed PRESSWOOD and James Faulkner, Appellees.

No. 09–87–039–CV.

Court of Appeals of Texas, Beaumont.

Oct. 15, 1987.

Rehearing Denied Jan. 13, 1988.

George R. Pain, Houston, for appellants.

Hilde Faulkner, Coldspring, for appellees.

## OPINION

DIES, Chief Justice.

On or about April 3, 1984, Johnny Miller and Betty Miller, Appellants, purchased a 24–acre tract of land in Liberty County from C. Ed Presswood and James Faulkner, Appellees. Appellees conveyed the property by warranty deed. Appellants made a cash down payment of $25,000 and, as further consideration for the transfer, they also executed a promissory note for $215,000, plus interest, together with a deed of trust to secure the note.

The Millers made the monthly payments on the note for fifteen months after the transaction. Then, Appellants filed their original petition, alleging that Mr. Presswood had made various material misrepresentations concerning the 24–acre tract of land and that Appellants had relied on these misrepresentations to their detriment. Appellants sought to enjoin foreclosure on the property by Appellees, urging that, due to the misrepresentations, there had been a failure of consideration. Appellants also sought money damages in

---

the amount of $63,705 (the total amount of payments they had made for the land), and to have the note and deed of trust cancelled.

On November 4, 1985, Appellants filed their first amended original petition. This amended pleading alleged that Presswood's conduct constituted violations of *TEX.BUS. & COM.CODE ANN. sec. 17.46(b)(5) and (7)* and unconscionable action under *TEX. BUS. & COM.CODE ANN. sec. 17.50(a)(2)*. The amended pleading also alleged that Appellants were consumers under the Deceptive Trade Practices Act and that written notice of the Deceptive Trade Practice claim had been given to the Appellees more than thirty days before filing of the suit.

A jury was selected on June 9, 1986. The trial began on the following Monday, June 16, 1986. The jury found that C. Ed Presswood had made various misrepresentations to the Millers in negotiating the sale of the land. Among these representations found by the jury to have been false are the following:

1. That there was not less than $300,000 worth of sand and gravel already stocked and piled on the premises.

2. That there remained unmined sand and gravel in an amount of $675,000 on the premises.

The jury also found that one or more of these misrepresentations was a producing cause of damages to the Millers. Furthermore, the jury found that Presswood's actions concerning this transaction were unconscionable and that such conduct was a producing cause of damages to the Millers. The jury found that the Miller's actual damages were $63,000, and also awarded the Millers attorney's fees. In answer to the only special issues submitted as to defendant Faulkner, the jury found that there was a partnership between him and Presswood concerning the transaction, and that

Presswood was acting within the scope of the partnership in his dealings with the Millers.

The Millers subsequently moved for judgment on the verdict against Presswood and Faulkner, jointly and severally. Presswood and Faulkner moved for judgment notwithstanding the verdict and moved the trial court to disregard the jury's answers to several special issues on the grounds that there was no evidence to support such answers. The defendants also moved for the trial court to disregard several other jury answers on the grounds that there was insufficient evidence to support such answers because such answers were clearly against the great weight and preponderance of the evidence. The motion for judgment notwithstanding the verdict and each of the motions to disregard a jury finding prayed that the trial court should grant a take nothing judgment against the Millers. None of these motions requested a new trial.

The trial court signed a judgment which granted the defendants' motion to disregard the jury's findings that a partnership existed between Presswood and Faulkner, and the finding that Presswood was acting within the scope of that partnership in his dealings with the Millers. The judgment explains that the court disregarded such findings because there was no evidence or insufficient evidence to support such findings. Based upon the remaining jury answers, the trial court granted the Millers a judgment for $63,000 and attorney's fees against Presswood and cancelled the promissory note executed by the Millers to the defendants. The trial court's judgment ordered that the Millers take nothing as against defendant Faulkner.

The Millers have perfected this appeal and present four points of error.[1] Their third point of error reads as follows:

1. The Millers have filed a motion requesting that this court disregard portions of the transcript filed in this cause. They argue that since these parts of the transcript are not required by law to be included in the transcript and since the Appellees filed no written request with the clerk of the trial court to have these items included in the record, that these items, including Appellees' motions to disregard jury findings, are not properly before this court. In our consideration of this appeal we have assumed that the entire transcript is properly before this court. Since we hold that Appellants (the Millers) are entitled to the relief they have sought

"The trial court erred in finding that there was no evidence to support the jury's answers [sic] to Special Issue 18 and in disregarding Special Issue 18."

Special Issue Number 18 reads as follows:

"Do you find from a preponderance of the evidence that there was a partnership between C. Ed Presswood and James E. Faulkner concerning the transaction in question?

"You are instructed that a partnership is a relationship between or among two or more persons where there is a common enterprise and a community of interest therein, the prosecution of the common enterprise for the joint benefit of the parties, and a right of each of the parties to participate to some extent in the profits as such, and an obligation of each of the parties to bear some portion of the losses, if ány, sustained by the business.

"Answer 'We do' or 'We do not'.

"Answer. We Do."

A trial court may only disregard a jury's answers to special issues if there is no evidence to support such findings. *Campbell v. Northwestern Nat'l Life Ins. Co.,* 573 S.W.2d 496, 497 (Tex.1978); *TEX.R. CIV.P. 301.* In determining whether there is no evidence to support such finding, the court must consider the evidence in the light most favorable to the jury's answer, considering only the evidence and inferences which support the finding and rejecting any evidence or inferences contrary to the finding. *Campbell,* 573 S.W.2d at 497.

Appellant, Mr. Miller, testified that during his negotiations with Presswood about purchasing the land, Presswood told Miller that "he had a partner in these land transactions" and that this partner was "Mr. James Faulkner of Coldsprings." During the defense counsel's cross-examination of Mr. Miller we find the following:

"Q [DEFENSE COUNSEL:] Okay. You made the statement, Mr. Presswood said he had a partner in the transaction, and he told you this when the papers were ready to sign?

"A [MR. MILLER:] Yes, ma'am.

"Q What meaning do you give to the word partner?

"A Well, the way he explained it to me was that he had a partner in these land deals, where he done most of the leg work and most of the paper signing, he being Mr. Presswood, and the other partner was more or less silent.

"Q But you did not gain the understanding that this was a business partnership, like you might have a partnership?

"A Well, I'm not sure about that."

Furthermore, Presswood testified by deposition that he and Faulkner were "50–50 partners" in this transaction and that any profits or losses in the transaction would be shared between the two. The portion of Presswood's deposition offered by the defendants reads, in part, as follows:

"Q [DEFENSE COUNSEL:] [Plaintiff's counsel] was also asking you about being partners with Mr. Faulkner, James Faulkner. Do y'all have any kind of formal partnership agreement?

"A [PRESSWOOD:] Like what?

"Q Written partnership agreement?

"A No, sir.

"Q More or less kind of an oral understanding between y'all?

"A That's right. I have known him for fifty years. We are close friends."

The Appellees argue that the existence of a partnership between two defendants cannot be established against one of them on the basis of the other's assertion that the partnership exists. *See Nueces Trust Co. v. White,* 564 S.W.2d 798 (Tex.Civ.App. —Corpus Christi 1978, no writ). In stating the rule relied upon by Appellees, the court in *Nueces Trust* cited *Robinson v. First Nat'l Bank of Marietta,* 98 Tex. 184, 82 S.W. 505 (1904). In *Robinson,* the Supreme Court held that such declarations of one defendant were not admissible to show

on appeal whether or not these motions are properly included in the transcript we need

make no ruling on this motion.

a partnership existed between him and another defendant. *Robinson*, 82 S.W. at 506. The court clearly indicated that the reason for holding such testimony inadmissible was that it was hearsay and, therefore, it constituted no evidence. However, under the Texas Rules of Evidence which became effective September 1, 1983, a different result is compelled in the present case. *TEX.R.EVID. 802* reads as follows:

"Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court or by law. Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay."

■ Appellants did not object to the introduction of any of the above mentioned evidence on any ground. Therefore, we cannot deny the probative worth of such evidence. Since there was some evidence of the existence of a partnership between Presswood and Faulkner, the trial court erred in granting Appellees' motion to disregard the jury's answer to Special Issue Number 18. Appellants' third point of error is sustained.

■ By their fourth point of error Appellants urge that the trial court erred in disregarding the jury finding that Presswood was acting within the scope of the partnership (with Faulkner) in his dealings with Appellants. As we noted above, Mr. Miller testified that Presswood told him that Mr. Faulkner was his partner "in these land transactions." Under the evidence presented, we believe that the jury could reasonably infer that Presswood's representations were made, at least apparently, in carrying on the partnership business in the usual way. Therefore, Faulkner was liable for the misrepresentations of his partner, Presswood, under the provisions of the Texas Uniform Partnership Act, *TEX.REV.CIV.STAT.ANN. art. 6132b, secs. 9 and 13* (Vernon 1970).

The Texas Supreme Court has recently held that the Deceptive Trade Practices Act does not render an innocent party to a business transaction vicariously liable. *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987). However, the Texas Uniform Partnership Act makes every partner liable for the acts of another if those acts were committed while apparently carrying on the partnership business in the usual way, unless the partner who committed the act had no authority to do so, and the person he is dealing with knew he had no such authority. *TEX.REV.CIV.STAT. ANN. art. 6132b, sec. 9* (Vernon 1970). This court has previously held that a partner who did not knowingly commit a deceptive trade practice is liable for treble damages for the actions of his partner, under the Texas Uniform Partnership Act. *Termeer v. Interstate Motors, Inc.*, 634 S.W.2d 12, 14 (Tex.App.—Beaumont 1982, no writ). We do not believe that *Home Sav. Ass'n* compels a different result in the present case. Appellants' fourth point of error is sustained.

■ The Appellees also urge several crosspoints of error. We note that the record and the briefs filed on appeal make it quite clear that the same two attorneys represented both Presswood and Faulkner at each stage of this case. The Millers have appealed only from that portion of the trial court's judgment which held that they take nothing as against Appellee Faulkner. Both Faulkner and Presswood urge this court to consider their crosspoints of error. However, as to Presswood, consideration of such crosspoints would place him in the role of an appellant, since no part of the trial court's judgment was favorable to him. *See Young v. Kilroy Oil Co. of Texas*, 673 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). A crosspoint that is not directed to the defense of the judgment against an appellant places the party asserting the crosspoint in the role of an appellant. *See id.* at 242. Since Presswood has not filed an appeal bond, cash bond, or an affidavit in lieu of bond, this court has no jurisdiction to consider these crosspoints insofar as they are urged in Presswood's behalf. *See id.* Therefore, Presswood's attempted appeal is dismissed.

By his first crosspoint of error, Faulkner urges that the trial court erred in overrul-

ing his motion to sever. In the trial court, Faulkner moved to sever the Miller's claims against him from their claims against Presswood. This motion was based upon a conflict of interest between the two Defendants. The motion was filed one week after the jury was selected. The trial court noted this fact and overruled the motion for severance. Even where a case encompasses two separate and distinct causes of action, severance is improper where the causes sought to be severed are so intertwined as to involve identical facts and issues. *Hayes v. Norman*, 383 S.W.2d 477 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.).

■ In order to sustain this point of error we would have to find that the trial court abused its discretion in refusing to sever the claims. *See Straughan v. Houston Citizens Bank & Trust Co.*, 580 S.W.2d 29, 33 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). If the Millers' claims against the two Appellees had been severed, we can see only two issues which the Millers would have had to prove against Faulkner that they would not also have to prove to recover against Presswood. These issues are whether Presswood and Faulkner were partners, and whether Presswood was acting in the scope of the partnership in his dealings with the Millers. Since the claims sought to be severed would involve the same proof and issues to a great extent, we hold that the trial court did not abuse its discretion in refusing to grant Faulkner's motion for severance. Furthermore, Faulkner's argument on appeal complains only that the trial court erred in failing to sever the Millers' claims based on the Deceptive Trade Practices Act from their claims based on failure of consideration. Faulkner never sought such relief from the trial court; therefore, his first crosspoint is not preserved for review. *See Gray–Taylor, Inc. v. Tennessee*, 587 S.W.2d 668, 671 (Tex.1979). Appellee's first crosspoint of error is overruled.

Faulkner's second crosspoint urges that the trial court erred in refusing to grant a motion for continuance. The only written motion for continuance in the record is one filed on behalf of Presswood. Faulkner never sought a continuance; therefore, his second crosspoint of error is not preserved for review. *Id.* Appellee's second crosspoint is overruled.

■ By his third crosspoint of error, Faulkner urges that the trial court erred in refusing his motions to disregard numerous answers of the jury to special issues. Faulkner complains that the evidence to support these jury findings was insufficient. Appellee's argument under this crosspoint makes it clear that he is complaining of factual insufficiency of the evidence. Furthermore, the motions to disregard these findings were all quite clearly an effort to have the trial court disregard jury findings on the ground that the jury findings were against the great weight and preponderance of the evidence. As we noted earlier in this opinion, a jury finding may only be disregarded if there is no evidence to support the jury's answer. *Campbell*, 573 S.W.2d at 497. Furthermore, the record contains some evidence to support the jury's findings: that Presswood represented to Mr. Miller that over three hundred thousand dollars' worth of sand and gravel were stocked and piled on the property, that such representation was false, and that the misrepresentation was a producing cause of the Millers' damages. Therefore, Faulkner's third crosspoint is overruled.

In his fourth crosspoint of error, Faulkner urges that the trial court erred in refusing to disregard the jury findings that Presswood's actions concerning the transaction constituted unconscionable conduct and the finding that such unconscionable conduct was a producing cause of damages to the Millers. Since the Millers were entitled to recover under the provisions of *TEX.BUS. & COM.CODE ANN. sec. 17.- 50(a)(1)* (Vernon Supp.1987), the legal sufficiency of the evidence to support the findings complained of in this crosspoint is immaterial. Therefore, Appellee's fourth crosspoint is overruled.

By his fifth crosspoint of error, Faulkner argues that the trial court erred in refusing to disregard the jury's finding that there

was a failure of consideration from Presswood and Faulkner because the finding was against the great weight and preponderance of the evidence. As we noted earlier in this opinion, a jury finding may not be disregarded unless there is no evidence to support it. *Campbell,* 573 S.W.2d at 497. Furthermore, whether there was sufficient evidence of a failure of consideration is immaterial due to our disposition of other issues in this appeal. Faulkner's fifth crosspoint of error is overruled.

Faulkner's sixth and final crosspoint urges that the trial court erred in not sustaining their complaint that the Millers failed to give written notice of their claim as required by *TEX.BUS. & COM.CODE ANN. sec. 17.50A* (Vernon Supp.1987). The Millers mailed a notice of claim letter to Faulkner on September 16, 1985. They filed their original petition on the following day. Faulkner's original answer contains a special exception to the Millers' failure to give written notice thirty days prior to filing their suit. However, there is nothing in the record to indicate that Faulkner brought this exception to the attention of the trial court prior to trial. In Faulkner's brief it is admitted that he received the Millers' notice of claim on September 17, 1985. On November 4, 1985, the Millers filed their first amended original petition which, for the first time, pleaded that the Millers were consumers and that they had complied with the notice provisions of *sec. 17.50A.* After trial began, Faulkner filed a written motion for dismissal of the Millers' suit with prejudice.

▆▆▆ The pleading and proof of notice under *sec. 17.50A* is not proof of the claim, it is merely a prerequisite to bringing the suit on such claim. *Pool Co. v. Salt Grass Exploration, Inc.,* 681 S.W.2d 216, 219 (Tex.App.—Houston [1st Dist.] 1984, no writ). The purpose of the notice requirement is to facilitate settlement of claims by giving the alleged wrongdoer a chance to compromise the claim, rather than expose himself to additional damages and attorney's fees allowed under the Deceptive Trade Practices Act. *Id.* While the notice requirement of *Sec. 17.50A* is a mandatory

prerequisite to bringing suit under the Act, a defendant who has not been given proper notice is required to object and file a plea in abatement in order to contest the claimant's right to sue. *Id.* Faulkner never filed a plea in abatement in the trial court. Furthermore, since he does not argue that the notice letter he received on September 17, 1985, was not sufficient notice of the nature and extent of the Millers' demand, we do not see how Faulkner could logically claim that his right to such notice was violated. Appellee's sixth crosspoint is overruled.

The judgment of the trial court is reversed insofar as it grants a take nothing judgment in favor of Faulkner. We hereby render judgment that James Faulkner and C. Ed Presswood are jointly and severally liable to the Millers for the entire amount of the judgment. In all other respects the judgment of the trial court is affirmed.

REVERSED AND RENDERED IN PART and AFFIRMED IN PART.