Harvey E. DONWERTH et
ux., Petitioners,

v.

PRESTON II CHRYSLER–DODGE,
INC., Respondent.

No. C–6821.

Supreme Court of Texas.

July 5, 1989.

Rehearing Denied Sept. 20, 1989.

Allen Landerman, Dallas, for petitioners.

Kevin Cook, Dallas, for respondent.

OPINION

SPEARS, Justice.

This appeal presents the following issues: whether the record demonstrates some evidence of misrepresentation, whether the court or the finder of fact determines if an action is groundless and brought in bad faith under the Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code § 17.41–17.63 (DTPA), and whether an appellee may seek affirmative relief in the court of appeals by cross-points without perfecting a separate appeal.

The court of appeals reversed the trial court's judgment in favor of the consumers and rendered judgment that the consumers take nothing, holding that there was no evidence to support the jury's verdict. The court also awarded attorneys' fees against the consumers and, in doing so, held that the issue of bad faith is for the finder of fact while groundlessness is for the court. Finally, the court dismissed the consumers' cross-points because no separate appeal was brought. 744 S.W.2d 142 (1987).

We hold that there is some evidence to support the jury verdict, that the determination of whether to assess attorneys' fees against a DTPA claimant is entirely for the court, and that the consumers' cross-points were properly preserved. Therefore, we reverse the judgment of the court of appeals and remand the cause to that court for consideration of factual sufficiency points and other points upon which it did not initially rule.

*Facts*

In March 1983 Harvey and Dorothy Donwerth purchased a used 1981 Chrysler automobile from Preston II Chrysler Dodge, Inc. Before the sale, Mr. Donwerth "mashed" on the brake pedal, finding it to be "spongy" rather than "a full pedal." Donwerth mentioned his concerns to Bob White of Preston II. After White told the Donwerths that he had driven the automobile as his personal car, that it was a good car, and that there was nothing wrong with the brakes, the Donwerths made the purchase.

The Donwerths began having serious problems with the car, especially the brakes, just months after purchasing it. Suspecting that the odometer reading did not accurately reflect the car's milage, Mr. Donwerth had the car's ownership history checked. As a result of this title run Donwerth discovered that the automobile had been repossessed from its last individual owner by Chrysler Credit Corporation, which then sold it to a wholesale dealer. That dealer in turn sold it to another wholesale dealer, Villa & Son Auto Sales, which sold it to Preston II. A prior owner's records showed the car with over 57,000 miles on it. At the time of sale, however, Preston II had given the Donwerths a written odometer mileage statement that the odometer reading of approximately 37,000 miles was correct to the best of its knowledge and belief. After the sale, when Mr. Donwerth first questioned the mileage statement, White told him: "That is the actual mileage. We bought that car from Larry Lange Cadillac." When the Donwerths confronted Preston II with the facts, however, White produced an odometer certificate from Fred Villa of Villa & Son stating under oath the unaltered odometer mileage to be 37,199.[1]

After unsuccessful settlement negotiations, the Donwerths drove for three con-

---

1. At the trial of this case Villa invoked his Fifth Amendment privilege against self-incrimination to avoid testifying about the odometer reading.

secutive Saturdays around the Preston II dealership with signs on their automobile stating: "BOUGHT THIS CAR FROM PRESTON II. THE MILES WERE ROLLED BACK." Preston II then brought this suit for defamation against the Donwerths, alleging that the sign falsely implied that an agent or employee of Preston II had rolled back the odometer mileage when the Donwerths knew that a prior dealer was responsible for the alteration. The Donwerths counterclaimed, alleging various violations of the DTPA.

The case proceeded to trial before a jury. The jury failed to find that the Donwerths had defamed Preston II, and the trial court rendered judgment for the Donwerths on that portion of the verdict. As to the counterclaim, the jury found that Preston II represented the automobile to be of a particular standard, quality or grade when it was of another. The jury failed to find, however, that Preston II acted knowingly in making the misrepresentation or that it violated the DTPA in any other respect. Finally, the jury found that the Donwerths' DTPA claims were groundless and brought in bad faith, and that Preston II's reasonable and necessary attorneys' fees were $7,000. The trial court, disregarding the groundless and bad faith findings, rendered judgment on the remainder of the verdict for the Donwerths for $15,300, representing statutory damages, attorneys' fees and prejudgment interest.

Preston II appealed, and the Donwerths by cross-points sought appellate attorneys' fees. The court of appeals reversed the judgment of the trial court, holding that there was no evidence to support the jury's finding that Preston II had violated the DTPA. Based on this holding, the court went on to hold the suit groundless as a matter of law. The court of appeals held the jury's finding that the suit was groundless and brought in bad faith constituted an unattacked finding of bad faith and rendered judgment against the Donwerths for Preston II's attorneys' fees of $7,000.00. The court of appeals also dismissed the Donwerths' cross-points, holding that the Donwerths were required to perfect a sepa-

rate appeal in order to seek affirmative relief.

### DTPA Claim: Circumstantial Evidence Representation Untrue

The Donwerths first complain that the court of appeals erred in holding that there was no evidence to support the jury finding that Preston II represented the automobile was of a particular standard, quality or grade when it was of another. We agree.

■ White, the Preston II salesman, represented that there was nothing wrong with the brakes. The Donwerths, however, produced evidence that despite proper braking procedure the brakes began "groaning" within a few months after the purchase. After five months, when the Donwerths had driven the car approximately 3,250 miles, Preston II's own service report showed that the front brake linings were gone, were "metal to metal," and that the back linings were "super thin," making the car "dangerous due to brakes." Finally, as previously noted, the odometer had been rolled back approximately 20,000 miles at the time of purchase. Together, this constituted some evidence that the brakes were excessively worn and defective at the time of the sale, thus supporting the jury finding that Preston II represented the car was of a particular standard, quality or grade when it was of another. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex.1984).

### Defendant's Attorneys' Fees

The Donwerths next complain that the court of appeals erred in concluding that Preston II was entitled to recover attorneys' fees against them under section 17.-50(c), which provides as follows:

> On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorney's fees and court costs.

We hold that the court of appeals erred in holding that the Donwerths' action was groundless and brought in bad faith.

The jury found, in response to a single issue, that the Donwerths' claim was both groundless and brought in bad faith. The court of appeals correctly held that a determination of groundlessness is for the court. However it erred in concluding that the action brought by the Donwerths was groundless. The court stated: "Because the Donwerths could come forward with no evidence to support a DTPA complaint against Preston II, their suit was without arguable basis in fact and, therefore, groundless as a matter of law." 744 S.W.2d at 145. Even if the court's approach were correct, our holding that there was some evidence to support the jury's answer to the DTPA inquiry would require a reversal on the determination of groundlessness. However we find the whole approach of the court of appeals flawed. To equate groundlessness with no evidence would preclude the award of attorneys' fees in obviously fraudulent or malicious actions when some evidence was presented, yet discourage legitimately wronged consumers from seeking the protections afforded by the Act for fear of failure in court. "Groundless" under the DTPA has the same meaning as "groundless" under Rule 13 of the Texas Rules of Civil Procedure: "[N]o basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." Tex.R.Civ.P. 13. Even evidence that is legally inadmissible or subject to other defects may be considered by a court in determining whether an arguable basis existed for the suit, provided there is some good faith basis for belief that the tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible evidence.[2] *Cf.* Tex.R. App.P. 84 (appeal "without sufficient cause"); Fed.R.Civ.P. 11 (reasonable basis for pleading or motion). As a matter of law, the Donwerths' claim was not groundless.

The court of appeals next held that the existence of bad faith is an issue for the finder of fact, and that there was some evidence of bad faith to support the jury's finding. This was also erroneous. Under the Act, defendants may recover their attorneys' fees when *the court* finds the DTPA action was groundless and brought in bad faith, or was brought for the purpose of harassment. Tex.Bus. & Com. Code § 17.50(c) (emphasis added). *See Leissner v. Schott,* 668 S.W.2d 686 (Tex. 1984). Despite the plain words of the statute, a number of courts of appeals have interpreted this section as providing that the finder of fact determines bad faith and harassment while the court determines whether the action is groundless. *See Mader v. Aetna Casualty and Surety Co.,* 683 S.W.2d 731, 734 (Tex.App.—Corpus Christi 1984, no writ); *Parks v. McDougall,* 659 S.W.2d 875, 876–77 (Tex.App.—San Antonio 1983, no writ); *LaChance v. McKown,* 649 S.W.2d 658, 661 (Tex.App.— Texarkana 1983, writ ref'd n.r.e.); *Computer Business Services, Inc. v. West,* 627 S.W.2d 759, 761 (Tex.App.—Tyler 1981, writ ref'd n.r.e.); *O'Shea v. International Business Machines Corp.,* 578 S.W.2d 844, 848 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). *But see Blizzard v. Nationwide Mut. Fire Ins. Co.,* 756 S.W.2d 801, 802–10 (Tex.App.—Dallas 1988, no writ). While this approach is admittedly appealing, it is contrary to the plain words of the statute. The court, not the factfinder, must determine the existence of groundlessness, bad faith and harassment under section 17.50(c).[3]

---

**2.** We note that the Donwerths tendered in evidence a written statement by a former employee of a company related to Preston II that the head of Preston II's used car department was selling used cars with rolled-back odometers and knew it. The statement was taken by an investigator from the Attorney General's Consumer Protection Division as part of an investigation of the complaint filed by the Donwerths against Preston with the Attorney General. Even though the trial court excluded the statement as hearsay, it provides a good faith basis for the consumers' claim.

**3.** The Legislature refused to amend the statute in 1979 to authorize the jury, as well as the court, to make these findings. *See* Bragg, Maxwell & Longley, *Texas Consumer Litigation,* § 9.07 at 246–47 (2d ed. 1983). Appellate review of such trial court determinations is a question of law under an abuse of discretion standard. *Cf. Barnes v. Whittington,* 751 S.W.2d 493, 494–95 (Tex.1988).

Under the statute, attorneys' fees may be awarded against the consumer if the court determines that the action was brought for the purpose of harassment. *See Leissner v. Schott,* 668 S.W.2d at 686. Because Preston II did not complain of the trial court's failure to find that the suit was brought for the purpose of harassment, Preston II has not preserved any claim to attorneys' fees on that ground.

■ Because the trial court expressly refused to find the action was groundless, and because as a matter of law the action was not groundless, it appears Preston II could not have prevailed on a claim the suit was brought for the purposes of harassment in any event. Section 17.44 of the DTPA provides that the Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." This legislative direction for a liberal construction to protect consumers means, at the very least, that the requirement that the suit be brought "for purposes of harassment" must mean it was brought for the *sole* purpose of harassment. *See* Curry, *The 1979 Amendments to the Deceptive Trade Practices—Consumer Protection Act,* 32 Baylor L.Rev. 51, 67 (1980). Because any purpose for recovering money damages, however small, as a motivating factor would defeat such a finding, it is difficult to conceive of a case which was not groundless but was brought for purposes of harassment. In *Leissner v. Schott,* this court, in refusing the application for writ of error, no reversible error, held that a judgment for attorney's fees could be based on a finding that a suit was brought for the purpose of harassment even in the absence of a finding of groundlessness. 668 S.W.2d at 686. However, neither party in *Leissner* urged that the failure to find groundlessness necessarily precluded a finding of purposes of harassment.

### Cross–Points

We turn now to the court of appeals' dismissal of the Donwerths' cross-points. The Donwerths asserted by cross-points in their appellees' brief before the court of appeals that the trial court erred in not awarding them appellate attorneys' fees as a matter of law. They did not, however, perfect a separate appeal by filing their own cost bond under Texas Rule of Appellate Procedure 40(a)(1). The court of appeals held that a separate appeal was required. We disagree.

Texas Rule of Appellate Procedure 40(a)(4) is dispositive on this issue. It states:

> *Notice of Limitation of Appeal.* No attempt to limit the scope of an appeal shall be effective as to a party adverse to the appellant unless the severable portion of the judgment from which the appeal is taken is designated in a notice served on the adverse party within fifteen days after judgment is signed, or if a motion for new trial is filed by any party, within seventy-five days after the judgment is signed.[4]

By its plain language, this rule provides the sole means by which an appellee's complaints on appeal can be restricted. We confronted this same issue in *Hernandez v. City of Fort Worth,* 617 S.W.2d 923 (Tex. 1981). In *Hernandez,* as in this case, the court of appeals refused to consider appellees' cross-points which sought more relief than appellees had received from the trial court, because appellees had not perfected an independent appeal. In reversing the court of appeals, we held:

> An appellee may use cross-points to bring forward complaints of some ruling or action of the trial court that the appel-

---

4. This rule is taken verbatim from former Texas Rule of Civil Procedure 353. What now appears as Rule 40(a)(4), Tex.R.App.P., was promulgated by this court as an amendment to former Rule 353, Tex.R.Civ.P. (1962), for the express purpose of overturning the result in *Connell Constr. Co. v. Phil Dor Plaza Corp.,* 158 Tex. 262, 310 S.W.2d 311 (1958). Tex.R.Civ.P.Ann. 353 (*General Commentary—1966*) (Vernon 1985). *Connell Construction* and other cases prior to the rule amendment are no longer applicable.

lee alleges constituted error as to him. [Citations omitted.] It is not necessary to perfect two separate and distinct appeals, unless the judgment of the trial court is definitely severable, and appellant strictly limits the scope of his appeal to a severable portion. [Citations omitted.]

*Hernandez,* 617 S.W.2d at 924.

■ We reaffirm that holding today. Unless an appellant limits his appeal pursuant to Texas Rule of Appellate Procedure 40(a)(4), an appellee may complain by cross-point in his brief in the court of appeals, without perfecting an independent appeal, of any error in the trial court as between appellant and appellee.[5] In this case, the court of appeals was required to consider the Donwerths' cross-points.

We reverse the judgment of the court of appeals and remand the cause to that court for further proceedings consistent with this opinion.

PHILLIPS, C.J., files a concurring opinion in which GONZALEZ and COOK, JJ., join.

RAY, J., files a concurring opinion in which MAUZY and HECHT, JJ., join.

PHILLIPS, Chief Justice, concurring.

I do not agree that a DTPA defendant who secures a finding that an action was brought for the purpose of harassment cannot recover attorney's fees unless he also obtains a finding that the action was groundless. I, therefore, do not join in the court's holding on that question.

This holding was not necessary to the disposition of this case, as Preston II did not complain of the trial court's failure to find that the action was brought for the purpose of harassment. The court undertakes to decide this issue without the benefit of briefing or argument, rather than

waiting until the question was properly before us.

Moreover, having undertaken to decide this issue, the court decides it wrongly. In my opinion, the plain language of the statute compels the opposite result. Prior to 1979, Tex.Bus. & Comm.Code § 17.50(c) provided as follows:

On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harassment the court may award to the defendant reasonable attorney's fees in relation to the amount of work expended and court costs.

As amended, the section now reads:

On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorney's fees and court costs. [Emphasis added.]

The underscored changes demonstrate the legislature's intention that a finding of harassment alone will justify an award of attorney's fees. As the court explained in *Schott v. Leissner,* 659 S.W.2d 752, 754 (Tex.App.—Corpus Christi 1983), *writ ref'd n.r.e. per curiam,* 668 S.W.2d 686 (Tex.1984).

When the legislature amends a law, it is presumed that it intends to change the law. [Citations omitted.] We give effect to the legislature's addition of the *comma* after the word "faith" and the insertion of the word "brought" a second time after the word "or" in the present version of section 17.50(c)....

Schott ... secured a finding that the suit against him was "brought for the purpose of harassment." Therefore, under the present statute, as amended, he is entitled to his attorney's fees.

[Emphasis original.] After this court refused to grant writ of error in *Schott,* the

5. This rule for appeals to the court of appeals differs from the rule for appeals to this court. To obtain a different and more favorable judgment in this court than the one rendered by the court of appeals, a party must file a timely motion for rehearing and his own application for writ of error in the court of appeals. *Ar-chuleta v. International Ins. Co.,* 667 S.W.2d 120, 123 (Tex.1984). Whether appeals to the court of appeals should be governed by a different rule than appeals to this court is an issue for continued study in revising the rules of appellate procedure.

commentators have uniformly regarded this matter as settled. *See, e.g.,* D. Bragg, P. Maxwell and J. Longley, *Texas Consumer Litigation* § 9.07 at Supp. 82 (2d ed. Cum.Supp.1988); W. Dorsaneo, 9 *Texas Litigation Guide* § 220.06[2][d] at 220–54 (1989); L. Hughes and T. Gavin, *Commercial Torts and Deceptive Trade Practices,* 39 Sw.L.J. 123, 147 (1985).

I admit that the distinction between "bad faith" and "harassment" is subtle, and the policy reasons for requiring one instance also to be groundless and not another are obscure. But this policy decision is one for the legislature, not the court, to make. Because I cannot justify our incursion into the legislative prerogative, I concur in the court's decision.

GONZALEZ and COOK, JJ., join in this concurring opinion.

RAY, Justice, concurring.

The concurring opinion of July 5, 1989, is withdrawn and the following is substituted.

The court has correctly held that an appellee may complain by cross-point of any error by the trial court without perfecting an independent appeal, unless the appellant limits his appeal pursuant to rule 40(a)(4) of the Texas Rules of Appellate Procedure. I fully agree with the majority opinion and concur only to further explain this very confusing and difficult area of appellate practice.

*Cross–Points in the Courts of Appeals*

This court has consistently held that an appellee can seek affirmative relief by cross-points against unfavorable rulings of the trial court unless the appellant has clearly and distinctly indicated his intention to limit his appeal.[1,2] *Barnsdall Oil Co. v.*

*Hubbard,* 130 Tex. 476, 483, 109 S.W.2d 960, 963 (1937). In amending former rule 420 of the Texas Rules of Civil Procedure in 1941, the court affirmed the right of an appellee to bring forward cross-points against the appellant without perfecting an independent appeal. Tex.R.Civ.P. 420 general commentary—1966 (Vernon 1985). This right has been recognized since the early history of this court. *Dallas Elec. Supply Co. v. Branum Co.,* 143 Tex. 366, 370–71, 185 S.W.2d 427, 430 (1945).

The requirement that an appellant must clearly and distinctly indicate his intention to limit his appeal produced gamesmanship by appellants who sought to delay and hide their intentions from appellees by varying when and how they indicated a limitation of appeals. To remedy this problem, the court amended rule 353 of the Texas Rules of Civil Procedure to provide strict procedures for prosecuting a limited appeal. Now appearing as rule 40(a)(4) of the Texas Rules of Appellate Procedure, the rule currently provides:

> *Notice of Limitation of Appeal.* No attempt to limit the scope of an appeal shall be effective as to a party adverse to the appellant unless the severable portion of the judgment from which the appeal is taken is designated in a notice served on the adverse party within fifteen days after judgment is signed, or if a motion for new trial is filed by any party, within seventy-five days after the judgment is signed.

Compliance with rule 40(a)(4) is the only way that something filed by the appellant may operate to limit what an appellee may assert by cross-points. Absent the appellant's compliance with rule 40(a)(4), the court of appeals must rule on any cross-

---

1. For definitions of the terms "cross-point," "reply point," and the disfavored "counterpoint," see *Jackson v. Ewton,* 411 S.W.2d 715, 717 (Tex. 1967).

2. Cross-points in the courts of appeals are necessary only when expressly required by the rules, or when the appellee seeks to complain of some ruling by the trial court. *Jackson v. Ewton,* 411 S.W.2d 715, 717 (Tex.1967); Tex.R.Civ.P. 324(c). In particular, a cross-point in the court of appeals is not necessary to preserve an appellee's

right to an equal or lesser judgment based on an independent ground of recovery supported by jury findings. *Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex. 1988); *Chesshir v. First State Bank,* 620 S.W.2d 101, 101 (Tex.1981). The appellee need not file a cross-point because the trial court has not committed any error. Although *Chesshir* is based on *McKelvy v. Barber,* the rule operates differently in the supreme court. *See infra* note 7; *McKelvy v. Barber,* 381 S.W.2d 59 (Tex.1964).

points brought by the appellee, regardless of the relief sought. *See Hernandez v. City of Fort Worth,* 617 S.W.2d 923, 924 (Tex.1981).

The court today reaffirms its approach in *Hernandez* and by implication disapproves the language of cases purporting to find limitations on an appellee's right to assert cross-points other than those expressly sanctioned by this court. *E.g., Dallas Indep. School Dist. v. Porter,* 759 S.W.2d 454 (Tex.App.—Dallas 1988, writ denied); *Speed v. Eluma Int'l, Inc.,* 757 S.W.2d 794 (Tex.App—Dallas 1988, no writ); *Essex Crane Rental Corp. v. Striland Constr. Co.,* 753 S.W.2d 751 (Tex.App.—Dallas 1988, writ denied); *Reynolds v. Charbeneau,* 744 S.W.2d 365 (Tex.App.—Beaumont 1988, writ denied); *Ragsdale v. Progressive Voters League,* 743 S.W.2d 338 (Tex.App.—Dallas 1987, no writ); *Miller v. Presswood,* 743 S.W.2d 275 (Tex.App.—Beaumont 1987, writ denied); *Miller v. Spencer,* 732 S.W.2d 758 (Tex.App.—Dallas 1987, no writ); *Chapman Air Conditioning, Inc. v. Franks,* 732 S.W.2d 737 (Tex. App.—Dallas 1987, no writ); *City of Dallas v. Moreau,* 718 S.W.2d 776 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Yates Ford, Inc. v. Benavides,* 684 S.W.2d 736 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Marshbank v. Austin Bridge Co.,* 669 S.W.2d 129 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Young v. Kilroy Oil Co.,* 673 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Stendebach v. Campbell,* 665 S.W.2d 557 (Tex.App.—El Paso 1984, writ ref'd n.r.e.).[3] Because of the growing number of decisions by the courts of appeals contrary to *Hernandez,* I will address this issue in detail.

Most court of appeals opinions limiting the appellee's right to assert cross-points beyond what has been expressly sanctioned by this court suggest that the matter raised by the cross-points must "affect the interest of the appellant" or "bear upon matters presented by the appeal." The quoted phrases or their equivalents have indeed appeared in opinions of this court as limitations on the appellee's right to assert cross-points. *See, e.g., Connell Constr. Co. v. Phil Dor Plaza Corp.,* 158 Tex. 262, 267, 310 S.W.2d 311, 313–14 (1958). Although rule 40(a)(4) has overruled the narrow holding of the *Connell Construction* case, the quoted phrases state a longstanding principle of appellate law that is unaffected by rule 40(a)(4).[4] Properly construed in the limited context in which this court has applied the language, these phrases describe a valid limitation on the right to assert cross-points. But the proper construction bears little resemblance to the broad-sweeping interpretation the lower courts have sometimes given these phrases.

The phrases "affect the interest of appellant" or "bear upon matters presented by the appeal" mean only that the matters presented by the appellee's cross-points must have actually been in controversy in the suit as contested matters between the appellant and the appellee. In particular, the phrase "bear upon matters presented by the appeal" does not mean that the court of appeals should look to the points presented by the appellant in his brief to determine what is presented in the appeal. In the ordinary case, when there is only one plaintiff and only one defendant, everything that was in controversy in the trial court between the two parties may be raised by the appellee's cross-points on appeal, unless the appellant has properly limited his appeal by strict compliance with rule 40(a)(4).

The situation is not the same when there are multiple plaintiffs or multiple defendants. It is in this situation that the phrases "affect the interest of appellant" or "bear upon matters presented by the appeal" retain some significant meaning. For example, when one plaintiff recovers judgment against a first defendant, but

---

3. The court has not previously addressed this cross-point issue either because the petitioners did not raise the issue in their applications for writ of error or because consideration of the cross-points was moot for other reasons.

4. *See* majority opinion *supra* note 4.

fails in the trial court to recover judgment against the second defendant, and the first defendant appeals the judgment, the plaintiff, as appellee, may not assert by cross-points that he should have recovered judgment against the second defendant. The first defendant is the appellant and the matters in controversy between the plaintiff and the second defendant do not "affect the interest of appellant." In the usual case, the plaintiff must perfect his own separate appeal against the second defendant. The matters in controversy between the plaintiff and the second defendant do not "bear upon matters presented by the appeal" of the first defendant.

A similar situation arises if the plaintiff has sued two defendants, and the first defendant cross-claims in the trial court against the second defendant. When the plaintiff appeals a judgment that he take nothing against the first defendant, or both defendants, the first defendant may not normally assert by cross-points that the trial court failed to render judgment in his favor against his codefendant. The matters in controversy between the two defendants do not "affect the interest of appellant"—the plaintiff—and do not "bear upon matters presented by the appeal" because the matters in controversy between the appellant and the particular appellee do not necessarily include what is in controversy between the two defendants.

An exception exists, of course, in those instances in which the rights of a nonappealing party are so intertwined with the rights of a party entitled to relief on appeal that the whole judgment must be reversed. *See Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 166 (Tex. 1982) (certain indemnity rights of nonappealing parties were so dependent or interwoven with the erroneous damages issue that the entire judgment had to be reversed); *Thompson v. Kelley,* 100 Tex. 536, 539, 101 S.W. 1074, 1075–76 (1907) (judgment fixing the boundaries to real estate must protect the rights of nonappealing parties). Such situations must be recognized on a case-by-case basis, and should be regarded as exceptions to the general rule.

The term "severability" has also caused much confusion when used in connection with cross-points. Rule 40(a)(4) permits an appellant to limit his appeal to a severable portion of the trial court's judgment. The term "severable" means that the cause could have been brought as a separate suit. *Kansas Univ. Endowment Ass'n v. King,* 162 Tex. 599, 611–12, 350 S.W.2d 11, 19 (1961). Severability is not a restriction on what allegations of error can be brought by cross-points.

An attempt to limit an appeal under rule 40(a)(4) may fail for lack of severability. When an appellant attempts to limit his appeal to a portion of the judgment that is not severable, even though he follows the formal requirements of rule 40(a)(4), he does not successfully limit his appeal. *See Archer v. Griffith,* 390 S.W.2d 735, 742–43 (Tex.1964). In this sense, severability issues may broaden the permissible scope of cross-points.

Some court of appeals opinions discuss severability as if it were a component of what "bears upon matters presented by the appeal" or "affects the interest of appellant." *See, e.g., Scull v. Davis,* 484 S.W.2d 391, 394 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r.e.) (holding that when an appellant appeals a severable portion of a judgment the appellee cannot use cross-points to complain of any matters falling wholly within the portion of the judgment not brought up for review by the appellant). Such discussion is error. Rule 40(a)(4) is the sole means by which an appellant may limit the appellee's right to assert cross-points in the courts of appeals.

Severability may be a factor in whether the rights of nonappealing parties are so intertwined with those of an appealing party that the whole judgment must be reversed. In this sense severability is always related to the interest of the appellant. But that is really a separate question. It is not an element of what "affects the interest of appellant" or "bears upon matters presented by the appeal" for purposes of what may be presented by cross-points. If the matter was in controversy between one

appellant and the appellee seeking to assert the cross-point, then it satisfies the test for being a matter presented by the appeal. If reversible error is shown between the appellant and the appellee, whether the judgment must also be set aside as to nonappealing parties is resolved under the principles set forth in *Turner, Collie & Braden* and the line of cases it cites.

### Cross–Points in the Supreme Court

One source of confusion in the lower courts may be our treatment of cross-points before this court. There has always been a crucial difference between cross-points in the courts of appeals and cross-points in this court. When a party seeks a different and more favorable judgment than the judgment rendered by the court of appeals, such point must be brought to this court by application for writ of error. *Archuleta v. International Ins. Co.,* 667 S.W.2d 120, 123 (Tex.1984). A cross-point is insufficient to preserve the point of error. In general, to obtain a different and more favorable judgment and to invoke the jurisdiction of this court, each party in the court of appeals must file both a timely motion for rehearing and an application for writ of error.[5,6] *Id.; Wich v. Fleming,* 652 S.W.2d 353, 356 (Tex.1983); *Pruitt v. Re-*

*public Bankers Life Ins. Co.,* 491 S.W.2d 109, 112 (Tex.1973); *Oil Field Haulers Ass'n v. Railroad Comm'n,* 381 S.W.2d 183, 187 (Tex.1964); *Schleicher v. Runge,* 90 Tex. 456, 457–58, 39 S.W. 279, 280 (1897); Tex.R.App.P. 130(b). This is in direct contrast to the rule in the courts of appeals, which allows an appellee to seek additional, affirmative relief by complaining of the trial court's error by cross-points so long as the appellant has not limited the scope of the appeal. *Hernandez,* 617 S.W.2d at 924.[7]

### Conclusion

This court has labored long and hard to remove as many procedural traps from our rules as possible. Litigants are entitled to have their disputes resolved on the merits, not on unnecessary and arcane points that can sneak up on even the most diligent of attorneys. The court's decision in this cause is another step in achieving this goal. However, the simplicity of our holding still belies the intricacies and troubling inconsistencies in our rules for perfecting appeals in other contexts.

I believe it is time to adopt a single, consistent procedure for perfection of appeals in Texas courts. I suggest two alter-

---

5. It is important to note that all applications for writ of error, including so-called conditional applications, cross-applications, and other successive applications for writ of error, must be filed with the clerks of the courts of appeals, *not* the clerk of the supreme court. Tex.R.App.P. 130(b).

6. The rule requiring a motion for rehearing in the court of appeals also applies to so-called conditional applications, cross-applications, and other successive applications for writ of error. Rule 130(c) of the Texas Rules of Appellate Procedure provides that "[i]f any party [timely] files an application ... any other party who was entitled to file such an application but failed to do so shall have ten additional days from the date of filing any preceding application in which to file it." The filing of a motion for rehearing is a jurisdictional prerequisite to the filing of an application for writ of error. *Oil Field Haulers Ass'n v. Railroad Comm'n,* 381 S.W.2d 183, 189 (Tex.1964); *Grayce Oil Co. v. Peterson,* 128 Tex. 550, 559, 98 S.W.2d 781, 785 (1936). A party who fails to file a motion for rehearing is, thus, not entitled to file an application.

7. There is at least one situation when it is not absolutely necessary to file cross-points in the supreme court. The appellate practitioner may be rescued by a corollary to the rule of *McKelvy v. Barber* if he fails to assert a cross-point (in this context now properly called a reply point) directed at preserving the appellee's right to an equal or lesser judgment based on an independent ground of recovery. *See McKelvy v. Barber,* 381 S.W.2d 59 (Tex.1964); Tex.R.App.P. 136(d). This situation usually arises when the court of appeals affirms a trial court's judgment supported by multiple independent grounds of recovery, but the court of appeals declines to rule on the appellant's remaining points of error after overruling other points of error that attack a single ground of recovery. *See McKelvy,* 381 S.W.2d at 64–65. However, the careful and seasoned appellate practitioner will include such a reply point anyway to ensure that the existence of independent grounds for affirmance of the court of appeals' judgment is brought to the attention of the supreme court.

natives; there may be others. One is that the filing of a cost bond by any party to a case invokes the jurisdiction of the appellate court for the benefit of all parties. If the appellant complains as to only one appellee in a multiple party case, that appellee may, without perfecting an independent appeal, complain of any other party. If the appellant abandons his appeal or loses his right to continue, any other party may take up the burden of furnishing a record and continuing the appeal. This is the usual procedure for appeals to the Texas courts of appeals although numerous exceptions have been made, mostly in multiple party cases. The other alternative is that any party who seeks more or different relief from that provided by the trial court's judgment must perfect his own appeal. An appellee may urge any ground in support of the trial court's judgment without perfecting an appeal, but he cannot complain of the judgment on the basis that some other party has appealed. This is generally the procedure for appeal to this court and to the United States courts of appeals. I do not attempt to present a comparison of the benefits and detriments of these two approaches. My point is simply that our justice system would be well served by a simple, consistent, comprehensive, easily applied set of rules applicable in all appeals.

We cannot, of course, attempt to formulate such rules in the context of the simple facts of this cause. We can, however, consider this problem in our continuing study and revision of the Texas Rules of Appellate Procedure.

Accordingly, I concur.

MAUZY and HECHT, JJ., join in this concurring opinion.