TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00174-CV






Jere and Helen Kelly, Appellants


v.


Don Benedict and Austin Inspections, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. D-1-GN-03-002286, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 

 Appellants Jere and Helen Kelly appeal from the judgment of the trial court after a
bench trial on Austin Inspections and Benedict's counterclaim against the Kellys for bringing a
frivolous claim under the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA). (1) See
Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp. 2008). The trial court found that
the Kellys' DTPA claim was frivolous and awarded Benedict $10,000 in attorney's fees. On appeal,
the Kellys argue that the trial court erred in awarding Benedict attorney's fees because their claim
was not groundless in law or fact, was not filed for the purpose of harassment, and was not filed in
bad faith. See id. § 17.50(c) (court shall award defendant reasonable and necessary attorney's fees
and court costs on finding that claim "was groundless in fact or law or brought in bad faith, or
brought for the purpose of harassment"). Because we conclude that the trial court did not abuse its
discretion in awarding attorney's fees to Benedict under the DTPA, we affirm the trial court's
judgment.

 

BACKGROUND

 In May 2002, the Kellys hired Benedict, an inspector licensed by the Texas Real
Estate Commission, to inspect a home that they were in the process of purchasing. Also in
May 2002, the Kellys hired Jerry Dickerson, a licensed termite inspector, to inspect the home for
termites. Neither Benedict nor Dickerson found or reported termite damage or any other visible
damage to the crawl space under the house. After the inspections were completed, the Kellys
purchased the home. 

 In October 2002, the Kellys observed a dirt-like material inside the house and
contacted Dickerson, who inspected the material and stated that he did not know what it was, but that
it was not the result of a termite infestation. In February 2003, the Kellys discovered more of the
dirt-like material under the house and again contacted Dickerson. Dickerson then consulted an
entomologist who identified the material as "frass," or fecal pellets from drywood termites, and
advised the Kellys that the home had a termite problem. The Kellys sought a second opinion
from another entomologist who inspected the home and confirmed an extensive drywood
termite infestation.

 After discovering the termite problem, the Kellys brought claims against the sellers
of the home, the sellers' realtor, Dickerson, and Benedict for their failure to identify or report the
damage. In response, Benedict filed a counterclaim, alleging that the Kellys' suit was groundless
in fact or law, brought in bad faith, or brought for the purpose of harassment, and seeking $22,000
in attorney's fees under the DTPA. See id. The Kellys ultimately settled their DTPA claim with
Dickerson and non-suited all remaining defendants. After a bench trial on Benedict's counterclaim,
the trial court found in favor of Benedict, awarding $10,000 in attorney's fees. (2) The Kellys' motion
for new trial was overruled by operation of law and this appeal followed. 

 

STANDARD OF REVIEW

 We review a trial court's award of sanctions under the DTPA for an abuse of
discretion. See Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634, 637 n.3 (Tex. 1989).
A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or without
reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985). 

 DISCUSSION

 In their sole issue on appeal, the Kellys argue that the trial court erred in imposing
sanctions because their original DTPA claim against Benedict was not groundless in law or fact and
was not brought in bad faith or for the purpose of harassment. 

 The sanctions provision of the DTPA states that "[o]n a finding by the court that an
action under this section was groundless in fact or law or brought in bad faith, or brought for the
purpose of harassment, the court shall award to the defendant reasonable and necessary
attorneys' fees and court costs." Tex. Bus. & Com. Code Ann. § 17.50(c). In the present case, the
imposition of sanctions appears to have been based on the trial court's express finding that "[t]here
is no factual basis to support the claims of [the Kellys] against [Benedict]." The trial court's
determination that the claim was groundless in fact is supported by a finding that "[t]here is no
credible evidence that there was any visible termite damage at the time of the inspection." 

 The Kellys concede that Benedict, while licensed as a home inspector by the Texas
Real Estate Commission, does not hold a license from the Texas Structural Pest Control Board and
therefore is prohibited under Texas law from inspecting for termites or reporting the existence of a
termite infestation. See Tex. Occ. Code Ann. §§ 1951.301-.303 (West Supp. 2008) (describing
licensing requirements for persons engaged in business of structural pest control); see also id.
§ 1951.003 (West 2004) (defining "business of structural pest control" to include identifying,
inspecting, or making inspection reports regarding infestations of "wood-infesting organisms"). 
However, the Kellys' position at trial and on appeal is that while Benedict was not required to
identify the damage in the crawl space of their home as having been caused by termites, he was
required to report the existence of the damage itself, to the extent it was visible on the surface of the
wood. In their live petition, the Kellys specifically alleged that Benedict "undertook the inspection
of this home for evidence of structural damage and failed to identify an ongoing or apparent damage
to the subfloor in the crawlspace of the home according to the standards of the industry." 

 During the bench trial on Benedict's counterclaim for sanctions, the court heard
evidence on the issue of whether any visible damage existed in the crawl space at the time of
Benedict's inspection. No photos were taken at the time of the inspection, but photos taken in
May 2004, two years after Benedict's inspection, were entered into evidence. While these photos
showed significant visible damage to the area, Robert Welborn, a licensed home inspector who
inspected the home in May 2004, testified that much of the damage in the photos was a result of
people probing into the wood for testing purposes. Welborn stated, "There were literally screwdriver
marks on the wood at numerous locations. . . . [I]t appears to me that there were different people
that were going out and shooting into the wood to make their forensic determinations or whatever." 
Jere Kelly, on the other hand, testified that while an entomologist "did some probing" into the wood,
some of the damage apparent in the photos existed prior to any forensic testing.

 Jere Kelly's testimony regarding the state of the damage at the time of the inspection,
however, is less than clear. Kelly testified that he was present in the crawl space during Benedict's
inspection, but that he could not remember whether he saw any damage in the crawl space at that
time, stating, "I don't remember. I think I saw the frass, but I didn't--I'm not sure if I saw it. If I
saw it, I didn't recognize it." Kelly further testified that in October 2002, approximately five months
after the inspection, he observed frass and a "kickout hole," inside the house near the fireplace. (3) 
Kelly then clarified his testimony to say that he had seen frass prior to October 2002, but did not
recognize it as evidence of a termite infestation. When specifically asked if he had seen any damage
to the wood prior to October 2002, Kelly replied, "I can't answer that." 

 The trial court also heard evidence regarding the nature of a drywood termite
infestation and the general lack of visible damage on the surface of wood where drywood termites
are present. Welborn, who once held an apprentice technician license from the Texas Structural Pest
Control Board, testified that drywood termites "eat out the interior part of the wood and leave the
surface in place," so that destructive testing is often necessary to detect a drywood termite
infestation. According to Welborn, it is difficult to see where a drywood termite has been because
they "eat the inside of the wood, and they leave the outside shell in place." Welborn explained that
typically the only evidence of a drywood termite infestation is the presence of frass, which is
commonly mistaken for sawdust or ant poison. Welborn further testified that drywood termites are
"extremely rare in this area," and that a termite inspector might "go several years and never see
drywood termite damage." The trial court was also presented with undisputed evidence that
Dickerson, a licensed termite inspector, inspected the home in May 2002 and again in November
2002 and reported no drywood termite damage, even after inspecting the frass and the kickout hole
pointed out by the Kellys.

 Benedict himself testified that he did not see any damage to the wood in the crawl
space during his inspection, and that if he had seen visible damage of the type depicted in the
photographs, he would have recommended a termite inspection. When asked about the presence of
frass during his inspection, Benedict stated, "I may have seen frass. Again, we see a lot of granular
material under houses. People put down poisons, or it could have been sawdust from someone
working on it. We see it often enough that it's not something we comment on." 

 In closing, the Kellys' counsel argued that the Kellys believed that there was visible
damage to the wood at the time of Benedict's inspection because an entomologist, Jeff Tucker, had
advised them that visible damage to the wood must have existed at the time of Benedict's inspection. 
For reasons not apparent from the record, Tucker's report was not entered into evidence. (4) While
excluded evidence may be reviewed for purposes of determining groundlessness, see Donwerth,
775 S.W.2d at 637 n.2 (considering evidence that trial court excluded as hearsay to determine
whether claim was groundless), we cannot do so without a "good faith basis for belief that the
tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible
evidence," id. at 637. Based on the limited information before us, there is no good faith basis for
the belief that Tucker's report might have been admissible at a trial on the merits of the DTPA claim
or could reasonably have led to the discovery of admissible evidence. 

 Viewing the totality of the evidence presented at trial, we cannot conclude that the
trial court abused its discretion in determining that the Kellys' suit was groundless in fact. See
Splettstosser v. Myer, 779 S.W.2d 806, 808 (Tex. 1989) (in determining groundlessness under
DTPA, we review all tendered evidence to determine if arguable basis in fact exists). Jere Kelly's
rather vague testimony indicates that, at best, there was some frass present at the time of Benedict's
inspection. As both Benedict and Welborn testified, frass is easily mistaken for ant poison or
sawdust, and in any event, could not have been reported as evidence of a termite infestation by
Benedict, who does not hold a termite inspection license. Considering that Dickerson, a licensed
termite inspector, did not recognize the existence of termite damage in either May or November
2002, it is difficult to believe that any visible damage existed on the surface of the wood when
Benedict conducted his inspection in May 2002, particularly in light of the testimony that drywood
termites typically leave no trace of damage on the surface of the wood. As a result, we hold that the
trial court did not abuse its discretion in determining that the Kellys' claim was groundless in fact
and therefore subject to an award of attorney's fees to Benedict under section 17.50(c) of the DTPA. 


CONCLUSION

 Having concluded that the trial court did not abuse its discretion in awarding Benedict
attorney's fees and expenses, we affirm the trial court's judgment.



 ___________________________________________

 Diane M. Henson, Justice 

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: June 5, 2009
1. Because the underlying dispute is based on Benedict's actions as an inspector for
Austin Inspections and because the appellees' interests do not diverge in this appeal, we will refer
to them collectively as "Benedict."
2. In the trial court's judgment, Benedict was also awarded expenses in the amount of
$246.91, for a total award of $10,246.91. However, in its findings of fact and conclusions of law,
the trial court found the sum of $10,000 to be "reasonable and necessary attorney's fees and
court costs" and concluded that Benedict was "entitled to the sum of $10,000." The parties do not
address this discrepancy on appeal.
3. A kickout hole was described at trial as a small hole used by drywood termites to enter the
wood, which is then later plugged with frass as the termites eat the interior of the wood.
4. According to the Kellys' brief on appeal, "The Court refused to admit the actual report
from Jeff Tucker, the Board Certified Entomologist." Based on our review of the trial transcript, it
appears that the Kellys did not make an offer of proof at trial regarding Tucker's report, nor did they
call Tucker to testify.