# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00174-CV

**Jere and Helen Kelly, Appellants**

**v.**

**Don Benedict and Austin Inspections, Inc., Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-03-002286, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellants Jere and Helen Kelly appeal from the judgment of the trial court after a bench trial on Austin Inspections and Benedict's counterclaim against the Kellys for bringing a frivolous claim under the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA).[1] *See* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp. 2008). The trial court found that the Kellys' DTPA claim was frivolous and awarded Benedict $10,000 in attorney's fees. On appeal, the Kellys argue that the trial court erred in awarding Benedict attorney's fees because their claim was not groundless in law or fact, was not filed for the purpose of harassment, and was not filed in bad faith. *See id.* § 17.50(c) (court shall award defendant reasonable and necessary attorney's fees and court costs on finding that claim "was groundless in fact or law or brought in bad faith, or

---

[1] Because the underlying dispute is based on Benedict's actions as an inspector for Austin Inspections and because the appellees' interests do not diverge in this appeal, we will refer to them collectively as "Benedict."

brought for the purpose of harassment"). Because we conclude that the trial court did not abuse its discretion in awarding attorney's fees to Benedict under the DTPA, we affirm the trial court's judgment.

**BACKGROUND**

In May 2002, the Kellys hired Benedict, an inspector licensed by the Texas Real Estate Commission, to inspect a home that they were in the process of purchasing. Also in May 2002, the Kellys hired Jerry Dickerson, a licensed termite inspector, to inspect the home for termites. Neither Benedict nor Dickerson found or reported termite damage or any other visible damage to the crawl space under the house. After the inspections were completed, the Kellys purchased the home.

In October 2002, the Kellys observed a dirt-like material inside the house and contacted Dickerson, who inspected the material and stated that he did not know what it was, but that it was not the result of a termite infestation. In February 2003, the Kellys discovered more of the dirt-like material under the house and again contacted Dickerson. Dickerson then consulted an entomologist who identified the material as "frass," or fecal pellets from drywood termites, and advised the Kellys that the home had a termite problem. The Kellys sought a second opinion from another entomologist who inspected the home and confirmed an extensive drywood termite infestation.

After discovering the termite problem, the Kellys brought claims against the sellers of the home, the sellers' realtor, Dickerson, and Benedict for their failure to identify or report the damage. In response, Benedict filed a counterclaim, alleging that the Kellys' suit was groundless

2

in fact or law, brought in bad faith, or brought for the purpose of harassment, and seeking $22,000 in attorney's fees under the DTPA. *See id.* The Kellys ultimately settled their DTPA claim with Dickerson and non-suited all remaining defendants. After a bench trial on Benedict's counterclaim, the trial court found in favor of Benedict, awarding $10,000 in attorney's fees.[2] The Kellys' motion for new trial was overruled by operation of law and this appeal followed.

## STANDARD OF REVIEW

We review a trial court's award of sanctions under the DTPA for an abuse of discretion. *See Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 n.3 (Tex. 1989). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

## DISCUSSION

In their sole issue on appeal, the Kellys argue that the trial court erred in imposing sanctions because their original DTPA claim against Benedict was not groundless in law or fact and was not brought in bad faith or for the purpose of harassment.

The sanctions provision of the DTPA states that "[o]n a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the

---

[2] In the trial court's judgment, Benedict was also awarded expenses in the amount of $246.91, for a total award of $10,246.91. However, in its findings of fact and conclusions of law, the trial court found the sum of $10,000 to be "reasonable and necessary attorney's fees and court costs" and concluded that Benedict was "entitled to the sum of $10,000." The parties do not address this discrepancy on appeal.

purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs." Tex. Bus. & Com. Code Ann. § 17.50(c). In the present case, the imposition of sanctions appears to have been based on the trial court's express finding that "[t]here is no factual basis to support the claims of [the Kellys] against [Benedict]." The trial court's determination that the claim was groundless in fact is supported by a finding that "[t]here is no credible evidence that there was any visible termite damage at the time of the inspection."

The Kellys concede that Benedict, while licensed as a home inspector by the Texas Real Estate Commission, does not hold a license from the Texas Structural Pest Control Board and therefore is prohibited under Texas law from inspecting for termites or reporting the existence of a termite infestation. *See* Tex. Occ. Code Ann. §§ 1951.301-.303 (West Supp. 2008) (describing licensing requirements for persons engaged in business of structural pest control); *see also id.* § 1951.003 (West 2004) (defining "business of structural pest control" to include identifying, inspecting, or making inspection reports regarding infestations of "wood-infesting organisms"). However, the Kellys' position at trial and on appeal is that while Benedict was not required to identify the damage in the crawl space of their home as having been caused by termites, he *was* required to report the existence of the damage itself, to the extent it was visible on the surface of the wood. In their live petition, the Kellys specifically alleged that Benedict "undertook the inspection of this home for evidence of structural damage and failed to identify an ongoing or apparent damage to the subfloor in the crawlspace of the home according to the standards of the industry."

During the bench trial on Benedict's counterclaim for sanctions, the court heard evidence on the issue of whether any visible damage existed in the crawl space at the time of

Benedict's inspection. No photos were taken at the time of the inspection, but photos taken in May 2004, two years after Benedict's inspection, were entered into evidence. While these photos showed significant visible damage to the area, Robert Welborn, a licensed home inspector who inspected the home in May 2004, testified that much of the damage in the photos was a result of people probing into the wood for testing purposes. Welborn stated, "There were literally screwdriver marks on the wood at numerous locations. . . . [I]t appears to me that there were different people that were going out and shooting into the wood to make their forensic determinations or whatever." Jere Kelly, on the other hand, testified that while an entomologist "did some probing" into the wood, some of the damage apparent in the photos existed prior to any forensic testing.

Jere Kelly's testimony regarding the state of the damage at the time of the inspection, however, is less than clear. Kelly testified that he was present in the crawl space during Benedict's inspection, but that he could not remember whether he saw any damage in the crawl space at that time, stating, "I don't remember. I think I saw the frass, but I didn't—I'm not sure if I saw it. If I saw it, I didn't recognize it." Kelly further testified that in October 2002, approximately five months after the inspection, he observed frass and a "kickout hole," inside the house near the fireplace.[3] Kelly then clarified his testimony to say that he had seen frass prior to October 2002, but did not recognize it as evidence of a termite infestation. When specifically asked if he had seen any damage to the wood prior to October 2002, Kelly replied, "I can't answer that."

---

[3] A kickout hole was described at trial as a small hole used by drywood termites to enter the wood, which is then later plugged with frass as the termites eat the interior of the wood.

The trial court also heard evidence regarding the nature of a drywood termite infestation and the general lack of visible damage on the surface of wood where drywood termites are present. Welborn, who once held an apprentice technician license from the Texas Structural Pest Control Board, testified that drywood termites "eat out the interior part of the wood and leave the surface in place," so that destructive testing is often necessary to detect a drywood termite infestation. According to Welborn, it is difficult to see where a drywood termite has been because they "eat the inside of the wood, and they leave the outside shell in place." Welborn explained that typically the only evidence of a drywood termite infestation is the presence of frass, which is commonly mistaken for sawdust or ant poison. Welborn further testified that drywood termites are "extremely rare in this area," and that a termite inspector might "go several years and never see drywood termite damage." The trial court was also presented with undisputed evidence that Dickerson, a licensed termite inspector, inspected the home in May 2002 and again in November 2002 and reported no drywood termite damage, even after inspecting the frass and the kickout hole pointed out by the Kellys.

Benedict himself testified that he did not see any damage to the wood in the crawl space during his inspection, and that if he had seen visible damage of the type depicted in the photographs, he would have recommended a termite inspection. When asked about the presence of frass during his inspection, Benedict stated, "I may have seen frass. Again, we see a lot of granular material under houses. People put down poisons, or it could have been sawdust from someone working on it. We see it often enough that it's not something we comment on."

6

In closing, the Kellys' counsel argued that the Kellys believed that there was visible damage to the wood at the time of Benedict's inspection because an entomologist, Jeff Tucker, had advised them that visible damage to the wood must have existed at the time of Benedict's inspection. For reasons not apparent from the record, Tucker's report was not entered into evidence.[4] While excluded evidence may be reviewed for purposes of determining groundlessness, *see Donwerth*, 775 S.W.2d at 637 n.2 (considering evidence that trial court excluded as hearsay to determine whether claim was groundless), we cannot do so without a "good faith basis for belief that the tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible evidence," *id.* at 637. Based on the limited information before us, there is no good faith basis for the belief that Tucker's report might have been admissible at a trial on the merits of the DTPA claim or could reasonably have led to the discovery of admissible evidence.

Viewing the totality of the evidence presented at trial, we cannot conclude that the trial court abused its discretion in determining that the Kellys' suit was groundless in fact. *See Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex. 1989) (in determining groundlessness under DTPA, we review all tendered evidence to determine if arguable basis in fact exists). Jere Kelly's rather vague testimony indicates that, at best, there was some frass present at the time of Benedict's inspection. As both Benedict and Welborn testified, frass is easily mistaken for ant poison or sawdust, and in any event, could not have been reported as evidence of a termite infestation by

---

[4] According to the Kellys' brief on appeal, "The Court refused to admit the actual report from Jeff Tucker, the Board Certified Entomologist." Based on our review of the trial transcript, it appears that the Kellys did not make an offer of proof at trial regarding Tucker's report, nor did they call Tucker to testify.

Benedict, who does not hold a termite inspection license. Considering that Dickerson, a licensed termite inspector, did not recognize the existence of termite damage in either May or November 2002, it is difficult to believe that any visible damage existed on the surface of the wood when Benedict conducted his inspection in May 2002, particularly in light of the testimony that drywood termites typically leave no trace of damage on the surface of the wood. As a result, we hold that the trial court did not abuse its discretion in determining that the Kellys' claim was groundless in fact and therefore subject to an award of attorney's fees to Benedict under section 17.50(c) of the DTPA.

## CONCLUSION

Having concluded that the trial court did not abuse its discretion in awarding Benedict attorney's fees and expenses, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: June 5, 2009

8