**GOODPASTURE, INC., Appellant,**

v.

**S & J FARMS, INC., Appellee.**

**No. 6449.**

Court of Civil Appeals of Texas,
El Paso.

Sept. 17, 1975.

McGowan, McGowan & Hale, Bill McGowan, Brownfield, for appellant.

Paul New, Denver City, for appellee.

## OPINION

OSBORN, Justice.

This case results from damage to a peanut crop which allegedly was caused by the improper application of a herbicide. The jury found that the contractor who sold and applied the herbicide made application of an excessive amount of Planavin on Appellee's peanut crop, and that this was negligence and a proximate cause of the damages found by the jury, but the jury found no negligence upon the part of Shell Chemical Company, the manufacturer of the product. Based upon such findings, the trial Court entered judgment against the Appellant. We affirm.

Several years prior to 1971, Shell Chemical Company manufactured and sold a herbicide called Planavin for use in weed control on cotton and soybean farms. In 1971, the product was cleared for use in raising peanuts. Prior to that time, Sam Oliver, as operator of S & J Farms, Inc., had actually used this herbicide on peanut crops by use of his own farm equipment in spraying the herbicide on the farm land while planting his crop.

At a meeting in the spring of 1971, a Shell representative advised West Texas area farmers concerning the use of Planavin and Mr. Oliver was told how to use this herbicide when planting peanuts. He subsequently contacted Appellant, who both sold and applied the product, and requested that they apply one pint per acre on a 55-acre tract where he planned to raise peanuts. The Planavin, together with a liquid fertilizer, was sprayed on the 55-acre tract on April 25, 1971, by Appellant's employees using Appellant's own equipment. Mr. Oliver then started running his harrow over the tract in order to incorporate the herbicide into the soil at the prescribed depth of an inch and a half to two inches. He then put a lister in the field and bedded the land and listed into rows. He planted his peanuts on May 28th with about four

inches knocked off the top of the beds and the seed planted below the soil treated with Planavin. He then started to water the field.

During this same planting season, Appellee provided the Texas A & M Extension Service at Stephenville, Texas, with a half acre out of his 55-acre tract for their use in raising peanuts under the same conditions as existed for its own crop. In addition, Appellee also planted another 56 acres of peanuts on a nearby farm where Mr. Oliver applied Planavin himself in the manner which he had previously used with his own equipment. His crop on this 56 acres produced 4700 pounds of peanuts per acre, which sold for $300.00 a ton.

By the end of June, Mr. Oliver concluded that the crop on which Appellant had applied Planavin was so damaged from an excessive application of the herbicide that it would be necessary to replant. He replanted in July and eventually made a crop of 700 pounds of peanuts per acre, which sold for $130.00 a ton less than his other crop. Thus, he concluded that he lost 2 tons per acre in production on the 55-acre tract where he had to replant, and incurred the cost of replanting and that this crop brought less per ton than would have been expected.

The jury found no negligence against Shell Chemical Company, but found Appellant made an excessive application of Planavin which was negligence and a proximate cause of the crop damage; that the quantity of Planavin in the soil at the time of the damage was in excess of the one pint per acre recommended, and that this was a proximate cause of the damage but not the sole cause; that Appellant applied more than one pint per acre which was negligence and a proximate cause of the damage, and that Appellee's damages were $33,930.00. The trial Court entered a take-nothing judgment against Shell Chemical Company and no appeal has been taken from that part of the judgment. Appellant

appeals from the judgment against it which was based upon the jury verdict.

The first two points of error attack the jury findings that Appellant made an application of an excessive amount of Planavin on Appellee's peanut crop and that it applied more than one pint of Planavin per acre to Appellee's land. Certainly there is evidence contrary to such jury findings, particularly the testimony of L. T. Hawkins that he took only 55 pints of Planavin from Appellant's warehouse for this job and that he only applied 55 pints which was not more than one pint per acre. But in passing on these "no evidence" points of error, this Court must consider only the evidence and inferences tending to support the finding and disregard all evidence and findings to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). Thus, we may not consider any of the testimony of Mr. Hawkins, which Appellant cites in support of its first and second points. In support of the jury finding, there is the testimony of Tommy Barton, an employee of Shell Chemical Company, that his inspection of the crop showed substantial damage and that the results of soil sample test showed up to seven pints per acre of Planavin at the time of its application. Richard Burner, an agronomist, did the soil sample analysis and his tests reflected from six to twelve times too much Planavin in the soil from the surface to a depth of four inches. In addition, Dr. Charles Simpson, from the Texas A. & M. University Experiment Station at Stephenville, concluded that the test crop which he was supervising had suffered herbicide effects when he examined the crop and replanted in July, 1971. We cannot say that there is "no evidence" to support the jury's answers to Special Issues Nos. 2 and 6, and the first two points of error are overruled.

The Third Point of Error contends that the trial Court erred in entering judgment for Appellee because the jury found that the excessive quantity of Planavin in the soil was not the sole proximate cause of the damage to the peanut crop. That issue and answer are as follows:

## "ISSUE NO. 3B

"Do you find from a preponderance of the evidence that the excess quantity of Planavin in the soil, if you have so found, was the sole cause of the damage, if any, to the peanut crop?

"Answer 'We do' or 'We do not'.

"Answer:   We do not  "

The negative answer is nothing more than a failure of the one having the burden of proof to get an affirmative answer. It is not a finding to the contrary. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966). This issue was apparently one requested by Shell Chemical Company, which with a favorable answer could have prevented a judgment against Shell, had it been found guilty of negligent conduct. There being no finding of negligence upon the part of Shell, this issue became immaterial, and the negative answer by the jury rendered it immaterial as a matter of law. The third point is overruled.

The fourth point contends that the answer to Special Issue No. 4 is against the great weight and preponderance of the evidence. That issue is as follows:

## "SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that the plaintiff allowed an excessive amount of soil, or other debris to accumulate around the base of the peanut crop thereby causing the plants to rot and deteriorate?

"ANSWER YES OR NO

"ANSWER   NO  "

█ In deciding this point, we consider and weigh all the evidence in the record. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Thus, we consider all the evidence that Planavin was the reason for the initial crop damage. In addition, there was testimony from Dr. Robert Berry, a plant pathologist for the Texas Agricultural Extension Service of Texas A. & M. University, that he examined some plants from the Appellee's farm in late June, 1971, and found the plants to be of fair size with good development for five or six-week-old plants. But he also said: " * * * there was above the crown area where the lateral branches come off the plant for an inch or so lesions, rotted, decayed areas around the branches of these specimens, which in my opinion was probably a disease situation brought about by what I judged to be soil movement up over this stem tissue that should have been in the air but it was covered." He admitted that his experience with peanuts was limited and that he ran no tests for herbicide damage. The quoted statement from Dr. Berry being opinion evidence, the jury was not required to accept it even if it was uncontradicted. *Sanchez v. Wade*, 514 S.W.2d 812 (Tex.Civ.App.—El Paso 1974, no writ). While the evidence was conflicting as to the cause of the crop damage, we cannot say that the jury's answer to Special Issue No. 4 is against the great weight and preponderance of the evidence. The jury saw the witnesses, considered all the conflicting theories, and it was their privilege to pass upon the qualifications and credibility of each witness. The Fourth Point of Error is overruled.

█ The Appellant next makes an insufficient evidence attack upon the answer to Special Issue No. 5 where the jury found that Appellee did incorporate the Planavin into the soil in compliance with directions from Shell Chemical Company. This is an issue upon which Appellant had the burden to obtain a favorable finding in order to obtain an answer to the issues on negligence and proximate cause, which were conditionally submitted. Mr. Oliver was explicit as to the directions given by Mr. Barton, the Shell employee, concerning the application and incorporation of the herbicide. He testified that Mr. Barton's instructions were followed. He gave detailed information as to the harrowing and listing of the field after the Planavin had been sprayed on the tract. He also indicated that by knocking four inches off the top of the beds the seed would be below the treat-

ed soil. He said he got the inch and a half to two inches incorporation that was prescribed. This testimony supported the jury finding, and the answer is not against the great weight of the evidence. The Fifth Point of Error is overruled.

■ The next two points contend that the jury's answers to Special Issues Nos. 2 and 6 are against the great weight of the evidence. In considering all the evidence in the record, we find the testimony of Mr. Hawkins that Appellant only applied 55 pints of Planavin which was the quantity charged on the invoices to Appellee. There is also the testimony of Dr. Berry that he did not find any serious problem from the herbicide, but did find some decay on the stem tissues. But there is also evidence from Mr. Barton of crop damage based upon tests which showed a very extensive use of Planavin. These tests were made by an agronomist, who himself testified to the extensive quantities of Planavin found in the soil which he analyzed. In addition, Mr. Oliver testified as to the comparison of his two crops on nearby tracts and the varying results in the one good crop where he knew the amount of Planavin used, and the other crop where Appellant applied the Planavin and where he had to replant the crop. Based upon the entire record, we conclude that the jury's answers are not against the great weight and preponderance of the evidence, and the Sixth and Seventh Points of Error are overruled.

■ The next two points of error attack the special issue which submitted the issue of damages. The jury found the difference in the net proceeds from the sale of peanuts based upon what Appellee actually received and what it would have received but for the damage from Planavin. The jury was instructed to consider the market value of the crop, less costs for gathering, preparing and placing the crop on the market, and excluding damage from other causes such as disease. Appellee replanted in an effort to mitigate its damages and the jury properly considered the net market value of the re-planted crop in deciding the damage resulting from Planavin to the initial crop. *International-Great Northern R. Co. v. Reagan*, 36 S.W.2d 564 (Tex.Civ.App.—Waco 1931), aff'd, 121 Tex. 233, 49 S.W.2d 414 (1932). The Eighth and Ninth Points of Error are overruled.

■ Appellant next complains of the refusal of the trial Court to submit an issue as to whether or not Appellee assumed the risk of loss of production from the land by plowing up the first crop and replanting in July, 1971. The doctrine of assumed risk until recently rejected has dealt with personal injuries in a master-servant relationship which is not applicable in this case. Even if applicable, the issue as proposed did not include all the elements of such a defensive issue. *J. & W. Corporation v. Ball*, 414 S.W.2d 143 (Tex.1967); *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex.1972); *Greenhill, Assumed Risk*, 20 Sw.L.J. 1 (1966). The Tenth Point of Error is overruled.

Appellant next complains of the trial Court's refusal to submit a series of issues which inquired whether Appellee's conduct in replanting in July, 1971, was negligence and, if so, whether such negligence was a proximate cause of its damages. Being under a duty to mitigate its damage, it appears that Appellee properly replanted its crop even though it was late in the season to begin a new crop. But regardless, any contributory negligence at that time would not be a defense to the cause of action for damages resulting from earlier conduct upon the part of the Appellant at the time of the first planting. In *Kerby v. Abilene Christian College*, 503 S.W.2d 526 (Tex. 1973), the Court said:

"We draw a sharp distinction between negligence contributing to the accident and negligence contributing to the damages sustained. Contributory negligence must have the causal connection with the accident that but for the conduct the accident would not have happened. Negligence that merely increases or adds to

**104**

the extent of the loss or injury occasioned by another's negligence is not such contributory negligence as will defeat recovery."

The Eleventh Point of Error is overruled.

 Appellant next complains of the trial Court's failure to submit its requested special issues which inquired whether the method used for preparing the land for planting caused an undue concentration of excessive amounts of Planavin in the seedbed and, if so, whether such conduct was negligence. There was no error in refusing such issues. And an affirmative finding on both issues would not be a defense without a further finding that such negligence was a proximate cause of Appellee's damage, and there was no request for a proximate cause issue. Thus, the issues as requested were not proper. Masterson, Preparation and Submission of Special Issues in Texas, 6 Sw.L.J. 163 (1952). In addition, such request was duplicitous in view of Special Issue No. 5, which inquired if the Planavin was incorporated into the soil in compliance with directions given by Shell Chemical Company. The Twelfth Point of Error is overruled.

The next point of error complains of the error of the trial Court in failing to enter judgment for Appellant based upon its defense of Laches and Stale Demands. Appellee sued Shell Chemical Company on August 28, 1972. The amended petition making Appellant a party was not filed until March 29, 1973. During the summer of 1971, Mr. Oliver advised Appellant of his problems with the initial peanut crop, and in fact its representatives went out and inspected the field where the peanuts were planted. This suit for damages from negligence having been filed within the limitations period, it was not barred by laches or stale demands. The defense was not established as a matter of law, and there being no jury finding to support such defense, the Thirteenth Point of Error is overruled.

The last point of error contends that the trial Court erred in the manner of submitting the case to the jury because the charge constituted a comment on the weight of the evidence, because of a double submission of Special Issues Nos. 2 and 6, and because of the refusal to submit requested defensive issues. We find nothing in the Appellant's objections to the Court's charge concerning a comment on the weight of the evidence. Assignment of error number 10 in the motion for new trial, which is germane to this point of error, contains no complaint as to a double submission of the same issue. We have previously passed upon the complaints concerning failure to submit certain requested defensive issues. The last point of error is overruled.

The judgment of the trial Court is affirmed.