**Daniel R. RUTHERFORD, Appellant,**

v.

**RIATA CADILLAC CO., Appellee.**

**No. 04–90–00080–CV.**

Court of Appeals of Texas,
San Antonio.

April 3, 1991.

Rehearing Denied May 2, 1991.

Daniel R. Rutherford, Catherine M. Stone, Watkins & Brock, P.C., San Antonio, for appellant.

Emerson Banack, Jr., Kathleen Gillette, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, for appellee.

Before BUTTS, CHAPA and CARR, JJ.

## OPINION

CHAPA, Justice.

This appeal arises from a deceptive trade practices action brought by Daniel R. Rutherford against General Motors Corporation, Cadillac Division of General Motors Corporation, and Riata Cadillac Company[1] alleging fraud, misrepresentation, breach of the implied warranty of merchantability and various violations of the DTPA, allegedly arising out of Rutherford's purchase and ownership of a used 1981 Cadillac Seville automobile. Riata counterclaimed for attorneys' fees under § 17.50 of the Texas Deceptive Trade Practices Consumer Protection Act. TEX.BUS. & COM.CODE ANN. § 17.50(c) (Vernon 1987). The case was submitted to the jury which failed to find that Riata Cadillac engaged in any false, misleading, or deceptive act or practice that was a producing cause of damages to Rutherford. At a subsequent hearing, the trial court found that, as a matter of law, Rutherford's suit against Riata was groundless and brought in bad faith; the trial court entered judgment that Ruther-

1. General Motors Corporation and Cadillac Division of General Motors Corporation were defendants in the trial court. A directed verdict was entered in favor of these two defendants and they are not parties on appeal.

ford take nothing on his claim against defendants and that Riata recover $37,500.00 in attorneys' fees on its counterclaim. Rutherford appeals only the judgment on the DTPA counterclaim.

The record reflects that Rutherford purchased a 1981 Cadillac Seville with a diesel engine from Robert Otero at Associated Body & Paint, Inc. for $15,000.00. At the time of purchase[2], Rutherford was informed that the vehicle had sustained some water damage. However, there is some debate regarding the extent of water damage and whether Mr. Otero represented that the engine and vital mechanical parts of the vehicle were untouched and undamaged by water.

Less than one month after purchasing the car, Rutherford began to experience numerous problems with it, including problems with the fuel injection, the air conditioning, and the electrical system. Rutherford subsequently had difficulties keeping the back window, hood, and trunk from falling down. Additionally, the vehicle repeatedly ceased running, knocked and, required an excessive amount of oil for its operation. Despite numerous repairs performed by Riata Cadillac Company, Rutherford continued to experience difficulties and continued to require numerous and varied repairs to his vehicle.

In 1985, Rutherford discovered that the diesel engine in his vehicle was under investigation by the attorney general's office, and that the faulty engine was a possible source of his problems with the vehicle. Rutherford took the vehicle to Riata Cadillac Company and after some insistence, had the converted engine replaced under warranty. However, following the installation of the new engine, as well as numerous repairs by Riata and others, Rutherford continued to have difficulties with the alternator, air conditioner and rear window. On December 16, 1985, Rutherford returned the vehicle, along with his keys, to Riata Cadillac Company. Thereafter, demand letters were sent to General Motors,

Cadillac Company and Riata Cadillac Company, with subsequent litigation ensuing.

Appellant's pleadings allege that: appellant is "a consumer of products, goods, and services as to Riata"; "the products, goods, and services of Riata" were "not fit for the purposes for which they are ordinarily used"; "Riata represented that the goods and services purchased by the plaintiff had qualities which they did not"; "Riata represented that a contract conferred rights which it did not"; "Riata failed to make repairs in a good and workman like manner, and failed to warn plaintiff that the gasoline engine converted to a diesel engine was defective" and nonrepairable; "Riata's repair work reached ... plaintiff without substantial change and in the condition it was in at the time the goods and services were sold"; "Riata placed goods and services into the stream of commerce"; "the goods and services sold to plaintiff by Riata were worthless at the time they were sold"; and, "the breach of warranty and the deceptive trade practices of Riata ... were a producing cause and the proximate cause of plaintiff's damages...." Appellant Rutherford's only complaint is that the trial court erred in finding that his suit was groundless and brought in bad faith; accordingly, appellant argues that the trial court erred in awarding Riata Cadillac Company $37,500.00 in attorneys' fees, pursuant to § 17.50(c). TEX.BUS. & COM. CODE ANN. § 17.50(c) (Vernon 1987).

Section 17.50(c), *supra*, provides as follows:

> On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorney's fees and court costs.

■ The Texas Supreme Court has interpreted this provision to require a showing by the defendant that there is "[n]o basis in law or fact and [the action is] not warranted by good faith argument for the exten-

---

**2.** There is some dispute regarding whether the vehicle was purchased by Rutherford in October of 1981 or February of 1982.

sion, modification, or reversal of existing law." *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989). Thus, the standard to be applied is "... whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex.1989), citing *Donwerth*, 775 S.W.2d at 637. On review, "the court, not the fact-finder, must determine the existence of groundlessness, bad faith and harassment under section 17.50(c)." *Donwerth*, 775 S.W.2d at 637. Further, the *Donwerth* court emphasized that "[a]ppellate review of such trial court determinations is a question of law under an abuse of discretion standard." *Id.* at 637, n. 3.

The court noted, additionally, that:

Even evidence that is legally inadmissible or subject to other defects may be considered by a court in determining whether an arguable basis existed for the suit, provided there is some good faith basis for belief that the tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible evidence.

*Id.* at 637.

▪ In the present case, appellant, Daniel Rutherford, testified that: he paid $15,000.00 for the automobile in question after examining the vehicle and finding that the water damage to the vehicle was limited to the floorboards, seats, and the padding and insulation of the doors; a couple of weeks later, the vehicle simply stopped running and was towed to Ken Batchelor Cadillac where new injectors were installed at a cost of $1,000.00; the injectors were subsequently replaced one month later when the car ceased running once again; appellant paid Riata on at least four occasions to repair the left rear window, which repeatedly fell down; although appellant paid to have the trunk and hood fixed twice, the problem remained uncorrected; appellant paid Riata in excess of $400.00 to repair the air conditioning and no mention was ever

made of rust or water damage being the cause, instead, Riata took appellant's money, allegedly repaired the problem, and returned the vehicle, along with Riata's guarantees, to appellant; in each instance, the vehicle was operating when appellant picked it up and it later quit working; in March of 1985, appellant took the vehicle to Riata, complaining that the vehicle was making a loud knocking noise and that it was using excessive oil; Riata allegedly repaired these problems with the engine, however, appellant continued to have identical problems; appellant became aware that General Motors had a program to replace the diesel engines and appellant availed himself of this program, yet he continued to have problems with the engine, necessitating the replacement of the alternator; appellant had numerous problems with the electronic system due to what he believed was the rather significant vibrations emanating from the diesel engine; and, appellant returned the vehicle and filed suit, alleging that Riata had breached its written warranty to him that the repairs made were good and would last, without having to be constantly redone.

The record further reflects that Mr. Robert R. Jourdan, who had been employed by Riata Cadillac for approximately thirteen (13) years, testified at trial that he did not believe that the vehicle in question had been completely submerged in water and further, that he believed that appellant's problems with the vehicle were caused primarily by the converted diesel engine in the vehicle. Mr. Jourdan also testified that because of the trouble with the diesel injection pump, and the fuel injectors, General Motors had a recall campaign on the particular diesel engine found in appellant's vehicle. Mr. Jourdan based his opinion both on his own inspection of the vehicle, as well as upon product knowledge supplied by Riata, the National Automobile Dealers Association and Consumer's Report.[3]

Further, Robert E. Otero, who had previously worked for Riata for approximately

---

**3.** These reports, which apparently supported the theory that the weakness in appellant's vehicle engine was caused by the differential in the compression ration between the original engine and the diesel engine, were excluded as hearsay.

five (5) years, testified that both he and appellant started the engine and verified that no water was present in either of the vehicle's oil pans. Moreover, Mr. Otero's ex-wife, Alana, testified that she saw the vehicle in question while it was still on the wrecker, immediately following its arrival at her husband's shop, and the only place the vehicle appeared to be wet and muddy was towards the bottom.

The record reflects that appellee's motion for summary judgment was denied prior to trial, and appellee's motion for instructed verdict was also denied at the end of the evidence; however, the court granted instructed verdicts as to General Motors Corporation and Cadillac Division of General Motors Corporation. Although this is indicative that the trial court considered there were valid issues of fact as to the claim against Riata, both at the time of the summary judgment hearing and at the instructed verdict hearing at the end of the evidence, the Texas Supreme Court has disapproved using the plaintiff's survival of a motion for directed verdict as the test for whether a case is groundless for purposes of DTPA, § 17.50(c). *Splettstosser,* 779 S.W.2d at 808. However, in *Donwerth,* the Texas Supreme Court also disapproved of using the no evidence standard as the test for whether the case is groundless, stating:

> The court [of appeals] stated: "Because the [plaintiff] could come forward with no evidence to support a DTPA complaint against [defendant], their suit was without arguable basis in fact and, therefore, groundless as a matter of law...." However, we find the whole approach of the court of appeals flawed. To equate groundlessness with no evidence would preclude the award of attorneys' fees in obviously fraudulent or malicious actions when some evidence was presented, yet discourage legitimately wronged consumers from seeking the protections afforded by the Act for fear of failure in court.

*Donwerth,* 775 S.W.2d at 637.

Therefore, we have reviewed the record under the approved standard to be applied which is "... whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Splettstosser,* 779 S.W.2d at 808.

In the present case, the jury's failure to find that Riata engaged in any false, misleading, or deceptive act or practice that was a producing cause of damages to Rutherford, amounts to nothing more than Rutherford's failure, as the party with the burden of proof, to obtain an affirmative answer; it is not a finding to the contrary. *C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966); *Goodpasture, Inc. v. S & J Farms, Inc.,* 528 S.W.2d 99, 102 (Tex.Civ.App.—El Paso 1975, no writ). "[A] cause of action does not become legally groundless simply because the plaintiff failed to convince the jury of the truth of his allegations." *D.W. Knebel v. Port Enter., Inc.,* 760 S.W.2d 829, 832 (Tex.App.—Corpus Christi 1988, writ denied). Accordingly, the jury's finding is not evidence that appellant's suit was groundless. Rather, "the totality of the evidence", both admissible and inadmissible, determines this issue. *Donwerth,* 775 S.W.2d at 637.

We hold that the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim, which is not groundless as a matter of law. As the court noted in *Donwerth,* the underlying purposes of the DTPA Act are to "... protect consumers against false, misleading, and deceptive business practices, unconscionable actions and breaches of warranty and to provide efficient and economical procedures to secure such protection." *Donwerth,* 775 S.W.2d at 638, citing TEX.BUS. & COM.CODE ANN. § 17.44. To allow appellee to prevail on this claim undermines the legislative intent of this Act and amounts to an abuse of discretion. Appellant's point is sustained.

Appellee argues in a cross-point that the trial court erred in failing to find that appellant's lawsuit against appellee was brought for the purposes of harassment. However, the court in *Donwerth,* stated:

> Section 17.44 of the DTPA provides that the Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive

business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." This legislative direction for a liberal construction to protect consumers means, at the very least, that the requirement that the suit be brought "for purposes of harassment" must mean it was brought for the *sole* purpose of harassment.... (Emphasis in original.) Because any purpose for recovering money damages, however small, as a motivating factor would defeat such a finding, *it is difficult to conceive of a case which was not groundless but was brought for purposes of harassment.*

*Donwerth,* 775 S.W.2d at 638 (emphasis added).

In the instant case, appellee has failed to prove, as a matter of law, that appellant's suit was brought for the *sole* purpose of harassment. *Id.* Accordingly, we reject appellee's cross-point.

The judgment is reversed and rendered in accordance with this opinion.

BUTTS, Justice, dissenting.

I respectfully dissent.

The evidence establishes that plaintiff in this case received only a *salvage title* when he purchased the used Cadillac, knowing it had been submerged in water during a flood. He received no warranty of any kind, either for a new or used car. The evidence showed that the car had been registered as a "totaled automobile" and had a "junk salvage" title only. The driver who escaped from the car during the flood testified it was totally submerged. He testified that after he crawled out a window, the car floated and then disappeared under water. In addition, the same car had been in a collision after plaintiff obtained it and that resulted in further damage.

There was evidence from experts and pictures of the car which established the existence of extensive rust and water damage within and without the car. The electrical system located in the dash was damaged by water. The electrical window and door systems were damaged by water.

The trunk area was shown to have been under water. A great deal of evidence of this nature was presented. Even the car seats were shown to have rust stains and water damage.

Although the plaintiff testified about a myriad of problems with the water-damaged car, it was shown that Riata did not perform work on many of those. It was shown that other automobile repair shops did some work on the car for the plaintiff.

A verdict was directed in favor of General Motors. The same attorneys represented both General Motors and Riata Cadillac. Many of the facts argued by plaintiff are refuted by the defendants who point to specific converse facts in the statement of facts.

The evidence shows the plaintiff admitted that Riata did work in a good and workmanlike manner and did the best they could with that car. The record reflects further that Riata did not work on several of the matters complained about.

Plaintiff sued both defendants under a strict liability theory. It is established law that his burden was to prove that the automobile had not been changed or altered since its manufacture or sale. Plaintiff knew the automobile had a salvage certificate of title, obtained by the insurance company because the auto was "totaled". No cause of action against the defendants would lie under the strict liability theory according to section 402A of the Restatement of the Law of Torts (Second) since this product did not reach the user or consumer without substantial change in the condition in which it was sold. In addition, Texas does not recognize this as a basis of the suit when the damages alleged arise from economic losses only. Further, no implied warranties arise with the sale of used goods. Here the goods were not only used but also damaged, a fact known to plaintiff. Under the warranty of repair claim against Riata, plaintiff would be required to prove the services were not performed in a good and workmanlike manner. Plaintiff freely denied this in his deposition,

asserting that Riata performed repairs in a good and workmanlike manner.

The two cases cited by the majority, *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634 (Tex.1989) and *Splettstosser v. Myer*, 779 S.W.2d 806 (Tex. 1989) do instruct the courts of appeals and the trial courts on the proper standard to apply: whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim. In the present case it was demonstrated that this particular Cadillac which had been submerged in water suffered such damage to its electrical system and other vital systems fixtures that it could not be sold with a regular title. The title was a mere *salvage title*.

To file suit against General Motors and Riata attempting to hold them responsible for damages under the theories alleged when the salvage buyer knowingly purchased a damaged, used car meets the standard set out in those cases. There was no arguable basis in fact and law for the consumer's claim in this case. The finding by the trial court that the suit was groundless and brought in bad faith should be affirmed.